Syllabus.

# Richmond.

## STONEBURNER & RICHARDS v. MOTLEY & OTHERS.

### APRIL 7, 1898.

Absent, Cardwell, J.

1. FRAUDULENT CONVEYANCES—*Reserving Interest or Control—Deferring Sale till Required by Creditors.*—A debtor cannot convey his property to a trustee to secure creditors and reserve an interest in or control over the property inconsistent with the grant, and adequate to its defeat, but a direction to the trustee, "when so required by the creditors, to take charge of said property and sell the same at public auction" is not of itself such reservation of interest or control as to avoid the deed.

2. FRAUDULENT CONVEYANCES—*Board and Lodging as Between Husband and Wife, and Parent and Child—Express Promise After Service Rendered.*—Board and lodging and the keep of a horse do not, as between husband and wife, parent and child, and other near relatives constitute a consideration from which the law will imply a promise of payment, and no action can be maintained therefor in the absence of an express contract or engagement to pay for them. Nor can an express promise to pay, made after the supplies have been furnished or the services rendered, be enforced against the promisor to the prejudice of his creditors.

3. FRAUDULENT CONVEYANCES—*Elimination of One Debt by Appellate Court—Estimates of Value of Property Conveyed.*—Where a deed of trust to secure creditors has been assailed by an unsecured creditor, and one of the secured debts has been stricken out by the appellate court as fraudulent, that court will not, upon mere estimates of the value of the property conveyed, declare that it is not more than sufficient to pay the other secured creditors whose debts are not disputed.

4. DEED TO SECURE CREDITORS—*Debt Valid in Part and Void in Part.*—Though a part of a debt secured in a deed of trust may be held to be without consideration and the deed to that extent void, it nevertheless furnishes a valid security for the balance of the debt not tainted with fraud, and founded on a valuable consideration. In

the case in judgment a part of the debt is founded on a sufficient consideration.

5. DEED TO INDEMNIFY SURETY—*Disposition of Fund Till Liability of Surety is Fixed.*—Where a deed of trust is given to indemnify a surety in a given amount, and it does not appear that the surety has been required to pay anything on account of his suretyship, a court of equity, in administering the trust, should not direct the amount to be paid to the surety, but should hold it until it can be ascertained whether or not there will ultimately be any liability on the surety.

6. COUNSEL FEES—*Allowance by Court.*—While in proper cases courts of equity may make allowance for counsel fees to be paid out of funds under the control of the court, it is a power capable of great abuse, and should be exercised with the utmost caution and a jealous regard for the rights of the litigants.

Appeal from decrees of the Circuit Court of Essex county, pronounced June 16, 1895, and January 4, 1896, in three suits in chancery heard together, wherein the appellants and others were, respectively, the complainants, and the appellees were the defendants.

*Reversed.*

The deed assailed in this case conveyed, amongst other things, two stocks of goods.   The following is a copy of the deed, omitting the names of creditors and the amounts secured:

"This deed made and entered into this 20th day of January, 1894, between D. P. Motley, of the first part; W. E. Wright, of the second part, as trustee, and the following creditors of the third part, witnesseth, that whereas the said D. P. Motley is indebted to various persons in sums herein named which he wishes to secure. Now, therefore, in consideration of the premises and of five dollars in hand paid him by said W. E. Wright, trustee, he doth grant unto said trustee the following property: his property and stock of goods at Rexburg, estimated at $1,000, at Battery at $800, large saw-mill and fixtures at $400, small saw-mill and fixtures at $300, one horse at $50, ten mules at $750, 4 wagons and gear at $100, 5 ox carts and yokes at $50, 6 yoke of oxen at $240,

interest in Tappahannock Machine Works at $600, 20 acres of land at Battery at $200, land bought of Dr. Lewis at $150, lot of land adjoining Motley's mill at $10, standing timber at $600, store accounts due $800, interest in lumber on hand $400, in trust to secure, &c.    *    *    *    *

"The said trustee, when so required by the creditors, to take charge of said property and sell the same at public auction, to the best advantage of all parties and out of the proceeds, after paying the costs of drawing and executing this deed, shall pay the first-class creditors in full, next the second creditors in full, and if any surplus remains, he shall pay over the same to the grantor, or to his order.

"Witness the following signatures and seals this the day and year first herein written."

The case was referred to a commissioner to "inquire and ascertain who had charge of the mercantile business of D. P. Motley, at Rexburg, and Battery, in Essex county, from the 20th day of January, 1894, to the date of sale." Upon this point the commissioner reported:

"That W. T. Noil had charge of the mercantile business of D. P. Motley at the Battery and that J. R. Kidd had charge of the mercantile business of said Motley at Rexburg, both from the 20th day of January, 1894, to the date of sale, by trustee Wright, J. R. Kidd taking charge as agent for W. E. Wright, trustee, on Monday the 22d day of January, 1894, at Rexburg, and W. T. Noil taking charge at the Battery as agent for same some time during the same week."

*Pollard & Sands*, for the appellant.

*W. W. Woodward, J. W. Fleet, W. O. Carter, Thos. Croxton, Richard H. Bagby* and *H. I. Lewis*, for the appellees.

KEITH, P., delivered the opinion of the court.

D. P. Motley, being embarrassed, executed a deed of trust to

W. E. Wright, trustee, for the benefit of certain creditors therein named, which deed is attacked as fraudulent as to them by the appellants, Stoneburner & Richards, and other creditors of D. P. Motley. They allege that the deed reserves to the grantor an interest and control over the property inconsistent with its avowed objects and adequate to their defeat. The deed, after conveying certain property to the trustee, directs him "when so required by the creditors to take charge of said property and sell the same at public auction." The language quoted is relied upon by appellants to avoid the deed. The principle invoked is abundantly sustained by authority. See *Catt* v. *Knabe*, 93 Va. 736. But the deed under consideration is not within its terms. It contains no reservation of any interest or control in the grantor. The property is conveyed without condition to the trustee, and those for whose benefit it was made have full power and dominion over it. There was no error, therefore, in the decree of the Circuit Court upon this point.

The deed was also assailed by appellants as being fraudulent in fact because it "secures J. R. Motley about $2,400 due him and for which he is liable as surety of the grantor. J. R. Motley is the father of D. P. Motley, the grantor, and $1,200 of the amount secured, as shown by the account filed in the record, is "for board of horse, self, and furnishing horse 12 years at $100 *per annum.*" There is no pretence that for this sum there was any antecedent contract by which the son bound himself to pay his father anything. As between strangers board and lodging and the keep of a horse would constitute a consideration from which the law would imply a promise to pay; but it is well settled that as between persons standing to each other in the relation of husband and wife, parent and child, grandparents, brothers, stepchildren, and other near relations, no action can be maintained for such services in the absence of an express contract or engagement to pay for them. The rule, says Chancellor Green, in *Updike* v. *Titus*, 2 Beasley, at p. 153, "rests upon the simple reason, that such services are not performed in the expectation

or upon the faith of receiving pecuniary compensation. Ordinarily, for a service rendered, the law implies a promise to pay corresponding with the value of the service; but for services rendered by members of a family to each other no promise is implied for remuneration, because they were not performed in the expectation by either party that pecuniary compensation would be made or demanded. The authorities upon this subject are numerous and decided, and the principle upon which they rest too clear for doubt."

"An express promise cannot be supported by a consideration from which the law could not imply a promise, except where the express promise does away with a legal suspension or bar of right of action, which, but for such suspension or bar, would be valid." *Beaumont* v. *Reeve,* 8 Adolp. & Ell. 486.

The principle is stated by Wightman, J., in the same case, as follows: "A precedent moral obligation, not capable of creating an original cause of action, will not support an express promise."

It is clear that independent of the express promise on the part of the son made after the services were rendered there could, in this case, have been no recovery upon the original cause of action, for it rested upon no consideration from which the law would have implied a promise to pay, and therefore the subsequent promise is insufficient. See in addition to authorities already cited *Cook* v. *Bradley,* 7 Conn. 57; *Mills* v. *Wyman,* 3 Pick. 207; *Wennall* v. *Adney,* 3 B. & P. 249; and *Hack* v. *Stewart,* 8 Barr, at p. 217.

The latter case is similar in many of its aspects to that under consideration, the father having conveyed to the son, in consideration of work and labor done by the son after he became twenty-one years of age. The conveyance was held to be fraudulent as to the other creditors of the father.

As to the item of $1,200, the contention of the appellants should have been sustained.

It is claimed on behalf of appellees that the appellants were not injured by the ruling of the court in dismissing their bill,

because they say that the undisputed debts secured in the deed would have exhausted the property conveyed before reaching them, even though appellants were successful in every contention they make.

This suggestion would require us to rely upon estimates possibly erroneous and misleading, and courts should be careful when an error to the prejudice of a litigant is established to decline to correct it upon the idea that it works no injury.    Presumably all error is prejudicial, and to warrant the court in disregarding established error upon the theory that the other party is not aggrieved thereby it should be made very plainly to appear that such is the fact.

The account of D. P. Motley with J. R. Motley, to which we have already referred, as to the item of board, etc., amounts in the aggregate to $2,733.62½.    Striking out the $1,200 for board leaves a balance of more than $1,500, which is claimed to be due for timber, ties, corn and other property sold by the father to the son.    This claim rests upon a different ground from that for board.    The son was in active business, and dealing in the purchase and sale of such articles as are found in the account under consideration.    The evidence tends to rebut the presumption that these items were delivered by the father as a gift, and they therefore constitute a good consideration for the deed of trust, though a part was barred by the statute of limitations at the time of its execution.    Striking out, therefore, the item of $1,200, the residue of the account is free from objection.

It is claimed by appellees that the deed secured J. R. Motley $2,400 due him, and for which he is liable as surety of the grantor, and there is evidence proving that as surety he was responsible for about $1,000, which, added to the $1,500, amounts to more than the $2,400, for which the decree was rendered in favor of J. R. Motley.    There is no proof, however, that J. R. Motley has paid or will be required to pay as surety the debts for which he is bound as such, and the decree appealed from directs the sum of $2,400 to be paid to him, or his attorneys, un-

conditionally.    If the $2,400 decreed to be paid embraces the $1,200 for board it was erroneous for the reasons already stated. If it consisted of the $1,500 named in the account between the father and the son, and the liability of the father as surety is to be looked to to make up the sum of $2,400, then $900 should have been retained by the court until it could be ascertained and determined whether or not ultimate liability as surety would fall upon J. R. Motley.

Another objection taken to the decree of the court below by appellants is because it allows a fee of $500 to counsel for R. M. Sutton & Co., and extra compensation to the trustee for services rendered by him.

There are cases which justify courts in making allowance for fees to counsel to be paid out of funds under their control, a power capable of great abuse and one which should be exercised with the most jealous caution and regard to the rights of the litigants.    In most cases it is better to leave those concerned to contract for the compensation to be paid for the services rendered or received.    But while this is true, it is also true that where parties to a suit unrepresented by counsel reap the benefit of services rendered in the progress of a cause, it is right and proper that those who received the benefit should be required to make just compensation for it.    But we repeat it is a power which is very capable of being abused, and should therefore be cautiously exercised, lest thereby the administration of justice be brought into reproach.

The fee of $500 was allowed in this case because, as is stated in the decree, the fund "arising from the sale was largely increased" by a sale of the property on time as a result of the litigation instead of for cash as provided for in the deed.    Any party to the deed could have insisted upon the execution of the deed in accordance with its terms, and any change made in it must therefore have been the result of agreement among the parties, and not of any particular service rendered by counsel, and the fee allowed would seem to be a very generous compensa-

tion for the service performed.    There is reason to believe, how-
ever, that upon this point the decree was rendered with the as-
sent of those affected by it, and as the cause must go back to the
Circuit Court to be further proceeded in, we express no opinion
beyond what has already been said upon the assignment of error
with respect to the fees of counsel and the allowance to the trus-
tee, but will leave these items to be further considered and dis-
posed of in the Circuit Court.

For the reasons stated, the decree complained of must be re-
versed.

*Reversed.*