. Syllabus.

---

# Richmond.

## Coons v. Coons and Others.

### March 14, 1907.

### Absent, Cardwell and Harrison, JJ.

1. APPEAL AND ERROR—*Effect of Reversal with Order of Reference.*— Where a record in this court discloses a mass of facts and innumerable items of claim and counter-claim between two parties, and evidence tending to prove items of claim of one party against another, a decree remanding the cause to the lower court with instructions to refer the cause to a master to ascertain in what property, real and personal, the parties are jointly interested, does not adjudicate that there is or is not any joint property. That was the fact to be ascertained, and the effect of the instruction was simply to indicate that this court was of opinion that there was evidence which rendered the aid of a master necessary to enable the trial court to deal intelligently with the case.

2. PARTNERSHIP—*How Formed—Case in Judgment.*—An agreement or contract to form a partnership is, as between the parties to the partnership, an essential element. In the case in judgment the evidence does not establish a partnership between the appellant and the appellee.

3. RESULTING TRUST—*Parol Evidence—Contract of Hiring—Case in Judgment.*—In order to establish by parol evidence a resulting trust in land arising from the payment of the purchase money by another than the grantee, the evidence must be very clear, and the trust must result at the time of the execution of the conveyance. Mere parol evidence should be received in such cases with great caution. In the case in judgment the evidence offered to establish the trust does not measure up to this standard. Neither does the evidence establish a contract of hiring, and, if it did, it affords no basis which enables the court to determine the amount of the compensation.

4. CONTRACTS—*Consideration—Father and Son.*—No contract will be implied to pay a brother for work done jointly with another brother on their father's farm.

Appeal from a decree in chancery of the Circuit Court of Culpeper county. Decree in favor of the complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*L. L. Lewis* and *Grimsley & Miller,* for the appellant.

*Barbour & Rixey,* for the appellee.

KEITH, P., delivered the opinion of the Court.

The case before us is the sequel to that reported in 95 Va. 434, 28 S. E. 885, 64 Am. St. Rep. 804. The decree of this court remanded the cause with instruction to refer it to a commissioner in chancery to ascertain in what property, real and personal, J. W. and H. C. Coons were jointly interested on the 27th of May, 1892, and to state and settle all joint accounts existing between them at that date, the commissioner to consider so much of the evidence set out in the record as might be pertinent to the inquiry directed, and any other evidence that the parties might desire to present.

The cause was by the Circuit Court referred to one of its commissioners, Mr. Burnett Miller, who reported that the evidence had convinced him that "H. C. Coons has no legal demand upon J. W. Coons, either for a division of the property now held by J. W. Coons nor any legal right to demand of J. W. Coons anything in the way of wages; and the evidence further discloses the fact that upon a statement of the money accounts between the same parties, H. C. Coons is indebted to J. W. Coons in the sum of $398.73, with interest from the 27th day of May, 1892." He further reports that in his opinion no partnership existed between H. C. Coons and J. W. Coons.

When this report came before the court it decreed that J. W.

Coons and H. C. Coons were not jointly interested in any property, real or personal, on the 27th day of May, 1892, and, without at that time passing upon any other question and without confirming the report, the cause was recommitted to one of the commissioners to make further inquiry and report as to any joint accounts existing between the parties on the date aforesaid.

This decree was execute by Mr. E. S. Turner, one of the commissioners of the Circuit Court of Fauquier, and he, being of opinion that the court by its decree of the 10th of November, 1900, had decided that H. C. Coons and J. W. Coons were not jointly interested in any property, real or personal, and therefore meant to decide against the contention of H. C. Coons that a partnership existed between him and his brother, J. W. Coons, did not undertake to settle a partnership account, and being of opinion that the statute of limitations applied to the previous items of the claim for wages, but allowing that claim for three years before the institution of the suit, to-wit, from May 27, 1889, to May 27, 1892, found a balance due on that account, principal and interest, from J. W. Coons to H. C. Coons, of $1,213.42. The commissioner, however, says that in making up the account of wages he does not mean to pass upon the legal question whether J. W. Coons can be held liable for such wages under the circumstances; that the testimony nowhere shows the promise to pay such wages, but, on the contrary, the contention of H. C. Coons was not that he was an hireling, but that he and his brother were partners and joint owners, and there is no testimony whatever in the record tending to establish a direct promise upon the part of J. W. Coons to pay wages." The legal proposition as to whether, under the circumstances disclosed in this case, there is an implied promise or undertaking to pay for the services rendered is left by the commissioner to the court for determination.

When this report came before the court, it was excepted to by both plaintiff and defendant, and on the 24th of February,

1903, a decree was entered, construing the decree of November 10, 1900, and declaring that the court did not intend to pass upon the question of the existence or non-existence of a partnership between the plaintiff and defendant, as assumed by the commissioner, and recommitted the report to Commissioner Turner to state and settle all joint accounts existing between J. W. Coons and H. C. Coons on the 27th of May, 1892.

In obedience to this decree the commissioner returned his report of March 12, 1903, in which he states an account which he designates as a joint account between J. W. and H. C. Coons, referred to in his report as the "purely moneyed account," in which he finds that J. W. Coons is indebted to H. C. Coons upon that account in the sum of $75.92. He reports that, upon the evidence, he considers it as established that a partnership did exist between J. W. Coons and H. C. Coons, and that H. C. Coons is entitled to receive his share of the profits arising from this business, to which he contributed his time, his labor and his skill; that to state the partnership account is a very difficult undertaking; that he has gone through the record time and again seeking to get from it those items which should be brought into a partnership statement; that he has met with great difficulty in ascertaining what the profits of the business had been; that he "intended at first to make a statement showing the entire accumulation, the contributions to the joint fund and the withdrawals of each brother, but this he has found it impossible to do, and he has therefore stated his account showing all the moneyed transactions between these two partners, and has based the profits to which Henry C. Coons is entitled upon a sum which is certainly not more than the amount of his share of the annual profits, and your commissioner arrives at this by fixing the sum of $250.00 per year as Henry C. Coons' share of the profits from this firm"; that "the testimony is, as stated, that during the twenty-four years of the existence of this partnership the accumulated property today, not counting the withdrawals therefrom by J. W. Coons to be invested in bank stock,

etc., to be about $15,000.00, and certainly in fixing the share of Henry C. Coons' profits at $250.00, he is not getting more than his share of the profits would have been were it possible to make an accurate statement from books regularly kept."

When this report came to be considered, upon exceptions, the court was of opinion, and so decreed, that the proof did not "establish a partnership between H. C. Coons and J. W. Coons, but that there is a resulting trust in favor of the said H. C. Coons in certain portions of the real and personal property held and claimed by J. W. Coons, and the said decree of November 10, 1900, and of February 24, 1903, are erroneous in holding otherwise." It was further ordered that the decrees of November 10, 1900, and of February 24, 1903, so far as they are inconsistent with the views of the court then entertained, should be set aside and annulled; and the report was recommitted to Commissioner Turner—

"First. To ascertain and report what property, real and personal, held and owned on May 27, 1892, by J. W. Coons, was purchased or produced, in whole or in part, by the time, labor, skill or money of H. C. Coons, and in which they were jointly interested at that date, and the value thereof, and the interest of H. C. Coons therein.

"Second. To ascertain and report what time, labor, skill and money was furnished by the said H. C. Coons in purchasing or producing, in whole or in part, the said property, real or personal, held and owned by J. W. Coons on May 27, 1892, and the value thereof.

"Third. To state and settle all joint accounts existing between the said H. C. Coons and J. W. Coons at that date."

From that decree an appeal was allowed by one of the judges of this court.

In the argument of the case much reliance was placed by counsel for appellees upon the decree of this court when the cause was remanded for further proceedings. It was earnestly contended that this court, having remanded the cause with in-

structions that it be referred to a commissioner in chancery "to ascertain in what property, real and personal, J. W. and H. C. Coons were jointly interested," had adjudicated that the parties stood in such relations to each other and to certain property owned by them as to require a settlement of the joint accounts between them. The argument was urged with much force that it. was the established law of this court that an order of reference would not be granted to enable a party asking for an account to make out his case; and that when an account was ordered it presupposed the existence of evidence which, in the judgment of the court, rendered the account directed to be taken proper and necessary.

The case came before us upon a bill to set aside an award in which a large sum had been ascertained by the arbitrator to be due from J. W. Coons to H. C. Coons. The testimony was comprised in a very voluminous record; there was evidence tending to prove items of claim on the part of H. C. Coons against his brother, J. W. Coons; and, when it was found necessary to set the award side upon grounds deemed sufficient by this court, in order that the litigation might be ended, the decree was entered upon which the subsequent proceedings have been taken.

The cause was to be referred to a commissioner to ascertain in what property, real and personal, J. W. and H. C. Coons were jointly interested. To ascertain "is to find out." Webster's Dictionary. There was no purpose on the part of this court to make a final adjudication as to the existence or nonexistence of joint property. That was the very thing the commissioner was directed to make inquiry about, and to ascertain and find out and report to the court; and if upon investigation it turned out that there was property in which the parties were jointly interested, then to state and settle accounts arising out of dealings and transactions of the parties with respect to such joint property. The most that can be made out of the decree of this court is that the court was of opinion that there was

evidence which rendered the aid of a commissioner necessary to enable the court to deal intelligently with the mass of facts and almost innumerable items of claim and counter-claim, running through a long series of years, presented in the record.

To constitute a partnership in the legal acceptance of the word, according to Lindley on Partnership, page 1, it is requisite that the partners "shall share something by virtue of an agreement to that effect, and that that which they have agreed to share shall be the profit arising from some predetermined business engaged in for their common benefit. An agreement that something shall be attempted with a view to gain, and that the gain shall be shared by the parties to the agreement is the grand characteristic of every partnership, and is the leading feature of nearly every definition of the term."

Collyer defines a partnership to be, as between the parties themselves, "A voluntary contract between two or more persons for joining together their money, goods, labor and skill, or any or all of them, under an understanding that there shall be a community of profit between them, and for the purpose of carrying on a legal trade, business or adventure."

An agreement, therefore, or contract, to form a partnership is, as between the parties to the partnership, an essential element. As between the partnership and third parties a partnership may exist without an agreement to that effect between the partners, if they have so held themselves out and dealt with the public as to estop the members of the partnership from denying its existence. But no such question arises in this case. It is one solely between the partners themselves, and we agree with the learned judge of the Circuit Court that the evidence does not establish a partnership. One of the commissioners (Commissioner Miller) had reached the same conclusion, and Commissioner Turner, while of opinion that a partnership existed, finds that there were no regular books kept, and there was so little method in their business affairs as to render it impossible for him to state an accurate partnership account. He

therefore fixes upon a sum which in his judgment is within the amount of the profits to which Henry C. Coons is entitled, and concludes that in fixing that share at $250 H. C. Coons "is not getting more than his share of the profits would have been were it possible to make an accurate statement from books regularly kept."

We have examined the evidence, which is too voluminous to be discussed in detail, and it satisfies us that no partnership ever existed. There is no evidence of an agreement between J. W. Coons and H. C. Coons fixing the terms of the partnership, nor of any such course of dealing between them as to justify the court in inferring the existence of a partnership. There were very many transactions between them, and so far as those transactions involved the payment and receipt of money the account is stated by the commissioner, and a balance ascertained in favor of H. C. Coons of $75.92. The report depends upon evidence so vague, contradictory and unsatisfactory as to render the statement of any account between the parties, or of any balance due from one to the other, wholly speculative and conjectural.

Nor do we think the evidence establishes a resulting trust in favor of H. C. Coons in any portion of the real or personal property held or claimed by J. W. Coons on May 27, 1892.

One of the earliest cases upon this subject in our reports is that of *Bank of U. S.* v. *Carrington,* 7 Leigh 566, the syllabus of which is as follows: "Where land is purchased and paid for by one person, and the conveyance is taken to another, the law will imply a trust for the benefit of the former; and such purchase and payment may be proved by parol evidence." The great controversy in that case was whether or not such a trust could be proven by parol evidence, the contrary contention being that it was within the statute of frauds; but the court reached the conclusion that a resulting trust might be proved by parol evidence, but that it was to be received with great caution. *Woodward and wife* v. *Sibert,* 82 Va. 441.

In *Miller* v. *Blose,* 30 .Gratt. 744, it is said that though a resulting trust may be established by parol evidence it must be clear and explicit, and such as to leave no doubt of the character of the transaction. "Where the trust does not arise on the face of the deed, but is raised upon the payment of the purchase money, which creates a trust which is to override the deed, the proof must be very clear, and mere parol evidence ought to be received with great caution. A resulting trust must arise at the time of the execution of the conveyance. Payment or advance of the purchase money before or at the time of the purchase is indispensable. A subsequent payment will not, by relation, attach a trust to the original purchase, for the trust arises out of the circumstance that the moneys of the real and not the nominal purchaser formed at the time the consideration of that purchase, and became converted into land."

The more recent decisions of this court are to the same effect.

In *Jesser* v. *Armentrout,* 100 Va. 673, 42 S. E. 681, this court quotes with approbation section 1087 of Pomeroy's Eq. Jur. "In pursuance of the ancient equitable principle that the beneficial estate follows the consideration, and attaches to the party from whom it comes, the doctrine is settled in England and a great majority of the American states that, where property is purchased and conveyance of the legal title is taken in the name of one person, A, while the purchase price is paid by another person, B, a trust results at once in favor of the party who pays the price, and the holder of the legal title becomes a trustee for him. In order that this effect may be produced, however, it is absolutely indispensable that the payment shall be actually made by the beneficiary, or that an absolute obligation should be incurred by him, as a part of the original transaction of purchase, at or before the time of the conveyance; no subsequent or entirely independent conduct, intervention, or payment on his part, would raise any resulting trust."

We have seen that no partnership existed. Had a partnership been proved, then all property purchased with partnership

money would have belonged to the partnership in equity, in whatever form the conveyance might have been made. It is true that at various times J. W. Coons had money in his hands belonging to H. C. Coons, but there is no proof that this money was at any time invested by him in property under circumstances which would create a resulting trust in H. C. Coons.

Having reached the conclusion that there was no partnership and no resulting trust, the only other ground of recovery possible in the case is for wages.

The report of Commissioner Turner makes it very plain that there was no contract by which J. W. Coons was to pay H. C. Coons wages in compensation for services rendered. "On the contrary," says the commissioner, "the contention of H. C. Coons was not that he was an hireling, but that he and his brother were partners and joint owners, and there is no testimony whatever in this record tending to establish a direct promise upon the part of J. W. Coons to pay wages."

The case is thus summarized by the commissioner in his second report: "The record in this suit establishes that soon after the close of the war Colonel W. S. Coons, the father of the plaintiff and defendant and of Miss Bettie Coons, found himself heavily involved, and with his financial affairs in such shape finally forced into the United States Bankrupt Court. In the year 1868, and prior to his going into bankruptcy, he conveyed the farm upon which he then lived with his family, spoken of in the record as 265 acres, to A. S. Fant, as trustee, to be held for the benefit of his wife, E. T. Coons, during her life, with the remainder over to the children of the said E. T. Coons then living (the said children were J. W. Coons the oldest, H. C. Coons the next, and Miss A. B. Coons the youngest child). At this time the said W. S. Coons conveyed the balance of his property, real and personal, to Albert S. Fant and J. Willie Coons, trustees, for the benefit of his creditors. It appears that all of the personal property of said W. S. Coons was soon after this sold under an execution by his creditors, and it

appears that W. H. Browning became the purchaser at that sale of all of it, or nearly all of it, according to the testimony, at a very low price. To your commissioner the preponderance of the evidence established that at this sale this property was bought in at this very small price because it was understood that the property thus bought was for the benefit of the family; in fact one of the parties who did the bidding testifies that he so regarded it, and it was his understanding that he was bidding the property in for the family; in fact he is the only one of the parties that did the bidding on the day of the sale who testifies in this case, and he states positively that he bought it for his sister (Mrs. E. T. Coons) and her three children. The testimony further shows that H. C. Coons states that about this time he had made all of his arrangements for going to Texas, and that his mother and father persuaded him from this step, and stated in the presenec of the family that they desired him not to go, but to stay there and do his part, and he would be equally interested with J. W. Coons. He further states that this was the beginning of the arrangement by which he contributed his time, his labor and skill to the farming operations from that time forward. Of course this is denied by J. W. Coons, and he states that he has no recollection of any such arrangement, and that none was made, so far as he knows."

The testimony shows that H. C. Coons did a good deal of work upon the farm down to the death of his father, Colonel W. S. Coons, which took place in 1889; but, there being no express contract for the payment of wages, it does not disclose a situation which establishes an implied contract upon the part of J. W. Coons to pay wages. On the contrary, looking to the relation that the parties bore to each other, the idea of an implied contract is repelled. See *Stoneburner* v. *Motley,* 95 Va. 784, 30 S. E. 364; *Beale* v. *Hall,* 97 Va. 383, 34 S. E. 53.

But apart from these considerations, if H. C. Coons were in a position to recover upon a *quantum meruit,* the evidence affords no basis which enables the court to determine the amount

of compensation. The commissioners fix the amount at $250 a year, but it is very obvious that the opinions of the witnesses as to the value of his services were given upon a very imperfect knowledge of those services, and rested in large measure upon the idea that there was a partnership in existence. For instance: Mr. John W. Payne, who was examined upon this subject, was asked: "Are you familiar with the character of the services rendered by H. C. Coons upon the home farm and upon the other farms which are the subject of controversy in this suit?" A. "I couldn't say that I was very familiar with it; I have seen a good deal of it." Q. "What would be a fair valuation *per annum* for such services as he has rendered?" A. "I should think it would be from $250 to $300."

Mr. J. W. Yancey was asked the same question, and his answer was: "Well, I regard these brothers as partners in business, and they each performed the part of the work assigned to them, and I suppose they could have hired a foreman to be an overseer on their farm for $250."

The commissioner has said, and said truly, that there is no evidence of an express contract for compensation, and surely the implied compensation would not be upon the footing of his employment as a foreman or overseer. For compensation in that capacity an express contract, we presume, would be required. It is a coincidence also that the commissioner in fixing the value of the share of H. C. Coons in the partnership, finding himself unable to state a partnership account, names the sum of $250 a year. One cannot resist the suggestion that the commissioner, like the witnesses, was viewing the case from a standpoint other than that H. C. Coons was a mere hireling when he fixed the wages at $250 *per annum*. There is proof in this record that ten dollars a month was the price paid for ordinary farm labor.

We have thus gone over the case and considered the various grounds upon which H. C. Coons bases his claims. We have seen that intelligent commissioners have entertained contrary

views with respect to the probative force of the evidence; and we have seen that the Circuit Court, upon those reports, has had the utmost difficulty in reaching a stable conclusion. We do not refer to the changes of view upon the part of the commissioners of the court, or of the court, in any spirit of criticism, but merely as illustrating the unsatisfactory nature of the proof submitted. The only conclusion of the commissioner which seems to rest upon a firm foundation is that upon a moneyed account there is a balance due from J. W. to H. C. Coons of $75.92.

We shall, therefore, reverse the decree of the Circuit Court, and, proceeding to make such order as the Circuit Court ought to have rendered, we shall decree against J. W. Coons and in favor of H. C. Coons for the sum of $75.92, with interest from the 27th day of May, 1892, and costs.

*Reversed.*