# Richmond.

## SCHRECKHISE v. WISEMAN.

### NOVEMBER 19, 1903.

#### Absent, Buchanan, J.*

1. DEEDS—*Delivery to Third Person for Grantee—Right to Recall—Subsequent Deed by Grantor—Notice to Second Grantee.*—A deed need not be delivered to the grantee in person in order to be effectual. If delivered to a third person unconditionally, and without reservation of any kind, with direction to deliver to the grantee after the death of the grantor, the delivery is effectual to pass title to the grantee, and the grantor cannot recall it. A subsequent deed to another grantee who has full knowledge of the facts will be null and void as to the first grantee. Notice to an agent to negotiate a transaction and procure a deed is notice to his principal.

Appeal from a decree of the Circuit Court of Augusta county, pronounced June 13, 1902, in a suit in chancery, wherein the appellee was the complainant, and the appellant and others were the defendants.

*Affirmed.*

The opinion states the case.

*J., J. L.,* and *R. Bumgardner* and *Harry H. Blease,* for the appellant.

*Curry & Glenn,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

In the latter part of 1898 Richard F. Humphreys, the father of appellee, Susan E. Wiseman, was the owner of a tract of

---

*Judge Buchanan was detained at home by sickness.

about 15 acres of land in Augusta county, and being desirous of dividing it equally among his five children, including appellee, reserving to himself a life estate therein, he caused it to be platted and divided into five lots of 3 acres each by J. Samuel Schreckhise, and Schreckhise prepared four deeds, which were at once executed by Humphreys, conveying 3 acres to his son, William Humphreys; two of the lots to his son, D. R. Humphreys, one of these lots to be held by the grantee for an insane son of the grantor; 3 acres to the grantor's daughter, Mary Echard; and 3 acres to appellee. The deed to William Humphreys, who had built a house upon his 3 acres, was delivered by the grantor to him, and the remaining three deeds the grantor delivered to Amanda Schreckhise, to be held by her during the life of the grantor, and at his death to be delivered to the respective grantees. Before these deeds were delivered by the grantor to Amanda Schreckhise, he showed the deed here in question to appellee, and upon being told by her that she was satisfied with the division of the land and the provisions of the deed, the grantor stated to her that he would deposit the deed with Amanda Schreckhise, who would deliver it to her (appellee) after his death. The consideration of each of these deeds was love and affection, and the nominal sum of one dollar in hand paid.

It is agreed by all parties interested that it was the purpose of the grantor, when he executed the deeds, "to live with his children time about," as they expressed it, and he did divide his time with them until about fifteen months before his death, on the 2d day of May, 1901, when he became an invalid at the house of his daughter, Mary Echard, where he remained till his death. During the latter part of his life he was very weak in body and mind, and for six months prior to his death he was a complete invalid, so much so that he had to be "fed and attended to like a baby," as it is expressed by the witnesses. Some time in February prior to Richard F. Humphreys' death,

J. Samuel Schreckhise, acting for his sister, R. S. Schreckhise, the appellant here, negotiated with Humphreys for the purchase of the four lots of land of 3 acres each which he had conveyed by the three deeds deposited with Amanda Schreckhise, the mother of J. Samuel Schreckhise and appellant, and some time prior to April 25, 1901, Humphreys got the three deeds from Amanda Schreckhise and destroyed them, or they were destroyed in his presence. Two of the deeds had been gotten by John Echard, the husband of Mary Echard, and the one to the appellee by J. Samuel Schreckhise, and on April 25, 1901, and after Humphreys had executed a will giving the whole of his estate, both real and personal, to his daughter, Mary Echard, he executed to appellant a deed conveying to her the four lots of land conveyed by the destroyed deeds, aggregating twelve acres, in consideration of $240.00, of which it is claimed, $200 was paid in cash, and a note given by J. Samuel Schreckhise to Humphreys for the residue. Immediately upon the execution of this deed, both the $200 and the note were turned over to Mary Echard. The evidence is conclusive that the grantor, Humphreys, when this deed was executed, was a complete invalid and unable to lift his hand to the pen with which his mark was made by the assistance of his daughter, Mrs. Echard, and the justice who certifies his acknowledgment; and as to whether he was competent, mentally, to consent to the making of the deed and understood what he was doing, as was said by the commissioner before whom the witnesses were examined, is not free from doubt. But, be that as it may, the question here is, whether or not the delivery of the deed under consideration was sufficient in law to pass to the grantee, the appellee, title to the land it conveyed?

The delivery to Amanda Schreckhise of the deed was, as she says, "to keep in trust, to hold in his lifetime." All of the witnesses who testify on this subject, including Mary Echard, concur in the statement that the deed was to be kept by Amanda

Schreckhise during the life of the grantor, and at his death to be delivered to the grantee. The deed itself does not disclose the character of its delivery, and, therefore, this must be determined from the surrounding circumstances, and they, as well as the declarations of the grantor, repeatedly made after the execution and deposit of the deed, leave no sort of doubt that it was to be held by the depositary during the grantor's life and at his death delivered to the grantee. It is manifest that the grantor adopted this mode of dividing his land among his children, reserving to himself the rents therefrom during his life, and there is not the slightest proof that he reserved expressly, or by implication, the right to recall the deeds, if he desired to do so, or to exercise any control over them after their delivery to Amanda Schreckhise.

In 9 Amer. & Eng. Enc. L. (2nd Ed.) 157, it is said: "A grantor may deliver a deed to a third person to hold until after the grantor's death, and then to deliver it to the grantee. Such a delivery is perfectly valid, but the deed must be left with depositary without a reservation by the grantor, expressed or implied, of the right to retake it or otherwise control its use. In support of this proposition of law a large number of cases from seventeen different States are cited, and none are cited to the contrary. Among the cases cited is *Trask* v. *Trask,* 90 Iowa, 318, 57 N. W. 841, 48 Amer. St. Reports, 446, in which it is said: "It is well settled, and may be said to be an established rule, that a deed may be delivered to a third person for the grantee, and, if subsequently assented to by the grantee, it will be as good a delivery as if made directly to the grantee; provided there is no reservation of a right in the grantor to countermand it."

In *White* v. *Pallock,* 17 Mo. 467, 22 S. W. 863, 38 Amer. Dec. 671, the opinion says: "A deed need not be delivered to the grantee in person. A deed delivered by the grantor to a third person to be delivered to the grantee, and by such third person delivered to the grantee, will constitute a good delivery, though the

grantor is dead at the date of the last delivery, for the delivery takes effect by relation as of the date when first made to the third person. In such case it would appear that the grantor parted with all dominion and control over the instrument, intending it to take effect and pass title as a present transfer." To the same effect is *Berry* v. *Young,* 98 Cal. 446, and the opinion therein goes farther to hold that when a deed is given to a third person to be delivered to the grantee after the grantor's death, and the circumstances surrounding the transfer show that the grantor intended to surrender his control over the instrument, evidence that he afterwards executed other deeds purporting to convey the same property, and that he also ordered the depositary to restore the deed, is incompetent for the purpose of showing what his intentions were in transferring the deed to such depositary.

The doctrine enunciated in the foregoing authorities is recognized and sanctioned by this in court in *Frank* v. *Frank,* 100 Va. 627, 42 S. E. 666, the opinion saying: "Where a deed is left with a third person with instructions to hold it until the grantor's death, and then to deliver it to the grantee, the weight of authority seems to be in favor of the doctrine that if there is no reservation by the grantor of the privilege of recalling the deed before his death, but if he delivers it to the depositary with the absolute and final determination that it shall take effect when the contingency of his death happens, it will become operative upon its delivery, after his death, to the grantee, and such delivery will relate back to the prior delivery for the purpose of passing the grantor's title." *Wheelwright* v. *Wheelwright,* 2 Mass. 454, 3 Am. Dec. 66; Shep. Touch. 57, 58.

In the case at bar, as we have seen, the delivery of the deed to Amanda Schreckhise was unconditional. There was no reservation of a right to recall the deed. It was placed in her hands to be delivered upon the grantor's death to the grantee, and the delivery was not made, because of the return of the deed

to the grantor by the depositary, which she did not do until coerced by J. Samuel Schreckhise telling her that the grantor would prosecute her if she did not return the deed to him. An effort was made to prove that appellee assented to the return of the deed to the grantor and knew of its destruction, but the proof wholly fails to sustain that contention. It does appear that the appellee knew that the grantor wished to have the deed sent to him, but there is not the slightest proof that she knew for what purpose he wanted it. Her uncontradicted statement in substance is, that she did not suppose that it was the purpose of her father to destroy the deed, as he had shown it to her when made, and upon her acquiescence in its provisions, told her that it was to be delivered to her after his death by Amanda Schreckhise. It is also true that appellee was at the house of John Echard (as were others, expecting her father to die at any time), when the deed to appellant of April 25, 1901, was executed, but there is not the slightest proof contradictory of her statement that she did not know the contents of the paper then being executed, and did not know that her deed had been destroyed and her land conveyed to appellant till after her father's death, which occurred but seven days thereafter.

We are of opinion that the delivery of the deed in question to Amanda Schreckhise for delivery to appellee after the death of the grantor, was a sufficient delivery in law to pass to appellee title to the land thereby conveyed.

This deed and its delivery being sufficient to pass the title to the land to appellee, the only question remaining is whether the appellant had such notice of it as rendered the deed to her of April 25, 1901, null and void as to appellee?

The bill filed by appellee to have declared null and void the deed of April 25, 1901, and to remove the same as a cloud upon her title to the land in question, charges that her deed was obtained from the hands of Amanda Schreckhise by fraud; that the destruction of it was a fraud upon her right, and that appellant was a party thereto, or knew of the fraud at the time.

In her answer to the bill, appellant, while denying participation in the alleged fraud, or any knowledge of it, says that being wholly inexperienced in business, she placed the matter in the hands of her brother, J. Samuel Schreckhise, and authorized him to act for her in the purchase of the land; that she gave her brother the money, instructing him to buy the land for her on the terms stipulated in the deed, &c. In other words, appellant's brother, J. Samuel Schreckhise, was her agent throughout the transaction, resulting in her getting the deed of April 25, 1901, and the possession of the land it purported to convey. Under these circumstances, notice to J. Samuel Schreckhise of the rights of appellee, was notice to appellant, his principal. That he had full and ample notice of the rights of appellee is shown beyond all question. He surveyed the 15 acres of land owned by Richard F. Humphreys, dividing it into lots to be conveyed by Humphreys to his children. He prepared, at the same time, the deeds, taking Humphreys' acknowledgment to each. He knew that the deed to appellate had been delivered to his mother, Amanda Schreckhise, to be by her delivered to appellee at the death of Humphreys. He obtained the deed from his mother after she had refused to deliver it to others, by telling her that if she did not give it up Humphreys would prosecute her. He knew of the destruction of the deed after it was gotten. He must have known, under the circumstances, that the object in destroying the deeds Humphreys had made to his children was to divest appellee and the other children of Humphreys, except Mary Echard, of all interest in the land, and secure to the latter the proceeds from its sale. It was not until he had procured the deed to appellee from the hands of his mother, and it had been destroyed, that the transaction, initiated in February, was consummated by the deed of April 25, 1901, whereby appellee, as he supposed, was deprived of her right to the 3 acres of land conveyed to her by the destroyed deed.

Opinion.

Upon the whole case, we are of opinion that the decree appealed from, which sets up the deed to appellee in question, and sets aside and annuls the deed to appellant of April 25, 1901, should be affirmed.

*Affirmed.*