## Wytheville.

LEE v. ELLIOTT & CO., INC., AND OTHERS.

June 13, 1912.

Absent, Keith, P.

1.  RESULTING TRUST—*Parol Evidence.*—While a resulting trust may be established by parol evidence, it must be clear and explicit, and such as to leave no doubt of the character of the transaction. Where the trust does not arise on the face of the deed, but is raised upon payment of the purchase money, which creates a trust which is to over-ride the deed, the proof must be very clear, and mere parol evidence ought to be received with great caution.

2.  RESULTING TRUSTS—*Payment of Purchase Money—Time of Payment—Case in Judgment.*—A resulting trust must arise at the time of the execution of the conveyance. Payment in advance of the purchase money, before or at the time of the purchase, is indispensable. A subsequent payment will not, by relation, attach a trust to the original purchase, for the trust arises out of the circumstance that the moneys of the real, and not the nominal, purchaser formed at the time the consideration of that purchase, and became converted into land. The evidence in the case in judgment does not measure up to the requirements of either this or the preceding paragraph.

3.  CORPORATIONS—*Private Dealings of Officer—Notice—Case in Judgment.*—Where an officer of a corporation is acting for himself in a transaction with the corporation, he is regarded as a stranger to the corporation, dealing as if he had no relation to it; and any uncommunicated knowledge which he may have in respect to the transaction will not be imputed to the corporation by reason of his possession of it. In the transactions involved in the case in judgment, the officer was not acting in the regular course of his business as such officer.

Appeal from a decree of the Circuit Court of Norfolk county. Decree for the defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*John N. Sebrell* and *J. Edward Cole*, for the appellant.

*Jeffries, Wolcott, Wolcott & Lankford*, for the appellees.

HARRISON, J., delivered the opinion of the court.

The record shows that for several years prior to 1905 R. H. Elliott and J. W. Hammond were partners, under the firm name of R. H. Elliott & Co., in the business of oyster packing in the city of Norfolk. It further appears that on January 13, 1904, the Norfolk–Willoughby Bay Company conveyed to R. H. Elliott and A. T. Lee a tract of six acres of land, the purchase price of which was $6,250; and that on April 10, 1905, Edward Spalding, trustee, conveyed to R. H. Elliott thirty-three acres of oyster ground in Little Bay, Norfolk county, and on February 1, 1906, the Norfolk-Willoughby Bay Company conveyed to R. H. Elliott eighteen lots, adjoining the six acres which had been conveyed by it to R. H. Elliott and A. T. Lee, jointly. In 1904 or 1905 it was determined to convert the firm of R. H. Elliott & Co. into a corporation for the purpose of carrying on the oyster packing and oyster planting business. This was done, the name of the corporation being the R. H. Elliott & Co., Incorporated. In 1907 the stock of the company was increased, and about that time A. T. Lee conveyed, unconditionally and without reservation, his undivided half interest in the six-acre tract to R. H. Elliott, who, in turn, conveyed to the newly-incorporated company the six-acre tract, the eighteen lots, and the thirty-three acres of oyster ground, the title to each of which was in him, for the price of $12,000, which was paid to him as follows: $3,000 in the stock of the company, $5,000 in cash, a note of the company payable to Elliott for $1,800, the balance of the $12,000 being represented by the indebtedness of R. H. Elliott to the company.

On the 5th of September, 1907, the company borrowed from Miss Cutter $5,000, secured by deed of trust on the six-acre tract and the thirty-three acres of oyster ground. In addition to the expenditure of the money raised by the sale of its increased stock, the company borrowed from Messrs. Fitzgerald and Hammond, two of its stockholders, $4,000 for its purposes.

R. H. Elliott was the president and general manager of the corporation, and was allowed much latitude in the conduct of its affairs. About two years after the transaction mentioned it was found that the company was doing a losing business, its assets being dissipated, and that further effort to carry on the business would result in additional financial trouble. Thereupon, the company determined to sell its property, pay its debts, and distribute any balance among its stockholders, and to this end advertised the property for sale.

When the property was advertised for sale, A. T. Lee filed the bill in this cause, alleging that he and R. H. Elliott had purchased the three pieces of property involved in this controversy jointly, and that one-half the consideration for all of the property had been paid by the complainant, and the title thereto conveyed to R. H. Elliott merely for convenience; that these facts created a resulting trust in favor of the complainant in all of the property, to the extent of an undivided one-half interest therein, and to an equitable lien upon all of the property for certain sums advanced by him upon the purchase price thereof. In response to the prayer of the bill an injunction was awarded, restraining the defendant company from selling the property until the cause was prepared and heard upon its merits, when a decree was entered dismissing the bill. From that decree this appeal has been taken.

The questions presented by the appeal are (1) do the facts and circumstances alleged in the bill and established by the evidence sustain the plaintiff's claim of a resulting trust in his favor; and (2) did the defendant corporation have notice thereof when it purchased the property from R. H. Elliott?

It is well settled that though a resulting trust may be established by parol evidence, it must be clear and explicit, and such as to leave no doubt of the character of the transaction. Where the trust does not arise on the face of the deed, but is raised upon the payment of the purchase money, which creates a trust which is to over-ride the deed, the proof must be very clear, and mere parol evidence ought to be received with great caution. A resulting trust must arise at the time of the execution of the conveyance. Payment in advance of the purchase money, before or at the time of the purchase, is indispensable. A subsequent payment will

not, by relation, attach a trust to the original purchase, for the trust arises out of the circumstance that the moneys of the real, and not the nominal, purchaser formed at the time the consideration of that purchase, and became converted into land. *Miller* v. *Blose*, 30 Gratt (71 Va.) 744; *Jesser* v. *Armentrout*, 100 Va. 666, 42 S. E. 681; *Coons* v. *Coons*, 106 Va. 572, 56 S. E. 576.

In 3 Pomeroy's Eq. (3d ed.), sec. 1040, the learned author says: "It is settled by a complete unanimity of decision that such evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of the payment by the alleged beneficiary beyond a doubt. Where the payment of only a part is claimed, the evidence must show, in the same clear manner, the exact portion of the whole price which was paid."

In the case under consideration the evidence wholly fails to measure up to the standard prescribed by the authorities cited. The only money which the bill alleges was paid by the complainant, and the only money the evidence attempts to show that he paid for any purpose, was the proceeds of two notes for $3,000 each, made by R. H. Elliott and endorsed by the complainant, which were discounted by the National Bank of Commerce. These notes, it is shown, were made up of sundry smaller loans, negotiated at different times, and finally consolidated into the two notes mentioned. The bill alleges that the purpose of negotiating these notes was "to raise money to take up the floating indebtedness, and assist the business of the corporation," and that complainant was "informed that the proceeds of said notes went to the credit of R. H. Elliott & Co., Incorporated, with the distinct understanding with R. H. Elliott, then president of the corporation, that, as soon as the mortgage could be arranged, this sum of $6,000.00, representing part of the purchase price of the above real estate and the oyster grounds, should be taken up and paid for, and an accounting made with complainant for his interest in the property."

This is a vague and uncertain allegation to form the basis of the resulting trust claimed in his favor by the complainant. The evidence adduced in support of the alleged resulting trust is wholly inadequate to sustain the claim. The deposition of the complainant is obscure and uncertain, and shows the impossibility

of ascertaining, with any degree of accuracy, how the proceeds of the money borrowed from the bank by R. H. Elliott, with the complainant as his endorser, was applied, or what part of it went into the land in which he claims a resulting trust. The complainant admits that no part of it went into the purchase price of the eighteen lots, and there is nothing to show that any part of it went into the purchase price of the oyster grounds, nor is it made to appear how much, if any part thereof, was used to pay off the indebtedness against the six-acre tract.

The only other witness introduced by the complainant was R. H. Elliott, whose evidence shows that the two notes of $3,000 each, discounted by the bank, was a personal indebtedness of his own, with the complainant as his endorser, it being the consolidation of various sums borrowed by him on complainant's endorsement, some of it borrowed prior to the existence of the defendant corporation, and part of it afterwards. He states that the proceeds of these notes was used by him, either to purchase stock in the defendant corporation, or was used by him in the affairs of that corporation; and that whenever the same was used in the business of the defendant corporation, it was entered on their books to his credit, and was withdrawn from time to time, and charged to his account; that none of said notes or checks have ever been payable to R. H. Elliott & Co., Incorporated, but have always been personal matters between himself and the complainant, A. T. Lee.

The conclusion from this evidence is irresistible that this $6,000, represented by the two notes of $3,000 each, endorsed by the complainant, was borrowed for the personal accommodation of the maker, R. H. Elliott, and that this effort to set up a resulting trust in the lands of the defendant corporation in favor of the complainant must fail for want of proof at all adequate to sustain the claim. The evidence satisfactorily shows that the defendant corporation had no knowledge of the claim of the complainant, or of the business relations and transactions between himself and R. H. Elliott, until after this suit was brought. Knowledge is sought to be imputed to the corporation because Elliott was its president. In the transactions herein involved Elliott was not acting in the regular course of his business as the president of the

company. There is no evidence that he was authorized to buy or sell real estate for or to the corporation. On the contrary, he was dealing for himself in selling his property to the company, and, under such circumstances, his knowledge cannot be imputed to the company.

In 10 Cyc., p. 1063, the law is stated as follows: Knowledge by an officer or agent, while acting for himself and adversely to the corporation, is not imputable to the corporation, for the reason that the officer or agent is interested in concealing it from his principal; and, consequently, the law will not presume that he has communicated it. Where an officer is acting for himself in a transaction with the corporation, he is regarded as a stranger to the corporation, dealing as if he had no official relation with it. When, therefore, an officer, director, or agent of a corporation deals with the corporation for himself, in his private capacity, any uncommunicated knowledge which he may have in respect of the transaction will not be imputed to the latter by reason of his possession of it.

It is contended that the books of the company showed that the complainant was connected with the matter. It clearly appears that the name of the complainant never, at any time, appeared on the books of the company, and the testimony shows conclusively that the books contained nothing to suggest that he had any interest whatever in the lands or business affairs of the company.

Upon the whole case, there is no error in the decree complained of, and it is affirmed.

*Affirmed.*