## GROGG et al. v. STEVENS et al.

(Circuit· Court of Appeals, Fourth Circuit.
June 15, 1925.)

No. 2352.

1. **Vendor and purchaser ⊗⟹226(2)—Purchaser, who had not fully paid price, held not purchaser for value without notice.**

In view of Code Va. 1919, § 5200, purchaser of land, who had ·paid only part of purchase price at time of notice of adverse claim, *held* not purchaser for value without notice.

2. **Vendor· and purchaser ⊗⟹242 — Adverse claimant has burden of proving purchaser had notice of title.**

An adverse claimant has burden of proving that purchaser had notice of his title before he had completed payment of purchase money, in order to defeat claim as purchaser for value without notice.

3. **Principal and agent ⊗⟹177(6)—Notice to purchaser's agent is notice to purchaser.**

Notice to purchaser's duly authorized agent and attorney in fact, acting for purchaser in premises, of a claim adverse to vendor, is notice to purchaser.

4. **Eminent domain ⊗⟹153 — Payment into court in condemnation proceedings by government held not to render one purchasing from record owner a purchaser for value.**

Where land condemned for forest reserves had previously been sold by record owner, but not fully paid for, payment into court by government of sufficient funds to cover value of land *held* not to complete status of purchaser as purchaser without notice.

In Error to the District Court of the United States for the Western District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

Condemnation proceeding by the United States to acquire land for forest reserve purposes, in which Thaddeus Stevens and others ·and R. C. Grogg and others filed claims to the money paid into court as the ascertained value of lands the title of which was in dispute. Decree for the claimants first named, and adverse claimants bring error. Affirmed.

John T. Harris, of Harrisonburg, Va., and Armistead R. Long, of Lynchburg, ·Va. (Harrison, Long & Williams and Randolph Harrison, all of Lynchburg, Va., on the brief), for plaintiffs in error.

Tazewell Taylor, of Norfolk, Va. (Edward C. Martz, of Harrisonburg, Va., on the brief), for defendants in error.

Before WADDILL and ROSE, Circuit Judges, and GRONER, District Judge.

ROSE; Circuit Judge. The controversy before us concerns the distribution of part of the money paid into the court below by the United States as the ascertained value of some 8,500 acres of land in Highland and Augusta counties, Va., condemned for forest reserve purposes. For brevity, the plaintiffs in error will be referred to as Grogg, who was one of them. The defendants in error, who. claim in right of their ancestress, Eleanor Crary, will be styled the Crarys. Both sides derived their title from one Schermerhorn.

In the '40's of the last century, Schermerhorn conveyed to John Crary an undivided half interest in this land, as well as in many other tracts in different counties, in what are now the states of Virginia and West Virginia. The grantee died shortly thereafter. By his will he devised all his real estate to his widow, the Eleanor Crary already mentioned. In 1850, Schermerhorn and Eleanor Crary partitioned their lands, and in the division the tract with which we are now concerned was deeded to her in severalty. Her title is now in the defendants in error. In 1903 the Schermerhorn heirs entered into an unrecorded agreement with one Sheldon, by which they were to put the title to the land, which, as it happened, did not belong to them, in the name of Sheldon, a lawyer of Buffalo, N. Y. He was to do what he could to sell it for them, and was to. receive one-half of the proceeds for his services and as commissions on the sale. They made the contemplated conveyances to him. At that time he knew nothing of the Crary title, because the deeds upon which it depended, while on record in what · is now Monroe county, W. Va., in which some of the land conveyed by them was, and is, had never been recorded in either Augusta or Highland counties, Va. In 1906 he learned of the Crary claim. He appears to have said nothing to the Schermerhorns of his discovery, but was at immediate pains to hunt up the Crarys. He gave them no hint that he held a deed from the Schermerhorns to their land. He dealt with them as if it was theirs, and undertook to sell it for them and to give them one-half of the proceeds, retaining the other one-half as pay for his trouble. They kept in their own name whatever title they had, giving him nothing more than a power of attorney to obtain offers to be submitted to them for acceptance or rejection. Nine years later he conveyed the land to Grogg, without letting the Crarys know that he had done anything of the kind, or even had any such action in contemplation. The title he conveyed was that which he took under the deed from the Schermerhorns, for other he had none. He, however, omitted to pay the latter one-half of the

small payment he received from Grogg on account of the purchase money.

Grogg, when he took the deed from Sheldon, had every reason to believe that Sheldon was authorized to convey all of the title that the original Schermerhorns ever had. If Sheldon had been a purchaser from the Schermerhorns for value and without notice, and had fully paid the consideration before he, in 1906, had learned that his grantees did not own the land and that the Crarys did, his title would have been good against them. In point of fact, however, he was not a purchaser at all, but a mere agent of the Schermerhorns, who for their own convenience had put the land in his name. It is unnecessary to inquire whether he would have had a valid claim upon it for any expenditures he had, made upon the faith of his agreement with them, and before he knew of the better rights of the Crarys, for there is no evidence that any such outlay was ever made. Moreover, even if he could be regarded as in any sense a purchaser, it is clear that he had not paid any part of the consideration to the Schermerhorns before he learned all about the Crary title.

[1] What is the position of Grogg? When the latter made his agreement with Sheldon, he took a deed from him. The title to the land, so far as the records disclosed, was in Sheldon. At that time Grogg had no reason to suppose that they did not truthfully tell the whole story. If, before notice of the Crary claim reached him, he had fully paid the purchase price to Sheldon, the land would have been his. The Crarys would have had no rights against either him or it. But that he did not do. He was to pay Sheldon $4,444.45 for the land. At the time notice of the Crary claim was given him, or his attorney or agent acting for him in the premises, Sheldon had received only $694.45 of it; the remaining $3,750 was still unpaid. Upon this state of facts, the learned special master, in an able and painstaking report, held that Grogg had never, within the meaning of the Virginia statute (Code Va. 1919, § 5200), attained the status of a complete purchaser. This conclusion was fully concurred in by the learned District Judge, upon whose well-considered opinion, if it had been reported, as apparently it has not been, we should be well content to let the case rest. For nearly two centuries, if not longer, it has been settled that the consideration and all of it, must be paid before a purchaser can assert the rights of one buying for value without notice. Tourville v. Naish, 3 Peere Williams, 307. The highest court of Virginia has repeatedly held it to be the accepted doctrine in that state. Mutual Assurance Society v. Stone, 3 Leigh, 235; Lamar v. Hale, 79 Va. 147; Bugg v. Seay, 107 Va. 648, 60 S. E. 89, 122 Am. St. Rep. 877. The most learned of the commentators upon the law of that commonwealth has given it his unquestioned approval. 2 Minor's Institutes, 877, Minor's Real Property, §§ 1409, 1413.

[2] It is true that the adverse claimant has the burden of proving that the purchaser had notice of his title before he had completed the payment of the purchase money. Lamar v. Hale, supra.

[3] Both the master and the District Judge found as a matter of fact that Grogg's agent and attorney duly authorized to act, and in fact then acting, for him in the premises, had knowledge of the Crary title before payment was made. We are not entitled to overturn the conclusion to which they have jointly come, unless we are satisfied that it was wrong. Our examination of the record convinces us that it was right. There is no question that, under the law of Virginia, notice to such an agent is notice to his principal. Minor's Real Property, § 1413.

[4] On behalf of Grogg, it is argued that the full purchase money was constructively paid to Sheldon before the date at which the earliest notice of the Crary claim reached his agent. This contention rests on the fact that in earlier condemnation proceedings of other land, which had formed part of the original tract conveyed by the Schermerhorns to Sheldon and by the latter to Grogg, the government had paid into court more money than was required to make up the full sum to which Sheldon or the Schermerhorns were entitled. It is admitted, however, that neither Sheldon nor the Schermerhorns received any part of it until after Grogg had been fully informed as to the state of the Crary title. On behalf of Grogg, it is said that he was prevented from making the payment by vis major, because under the law the money the government paid into the court could not be paid out until the court had ascertained who the proper parties to receive it were, and had ordered it given to them. The learned master aptly replies that nobody prevented Grogg from paying Sheldon out of his own funds whenever he chose to do so. It may be added that, in the original bargain between Grogg and Sheldon, there was nothing contemplating that payment should be made out of public funds. If Grogg wished to make the government his paymaster, he must be content to have his rights rest upon the time at which the government's money

was awarded to Sheldon or to the Schermerhorns. In order to entitle him to get from one man good title to the property of another, it was essential that he should have completed payment to his grantor before he learned that the latter had no right to that which he had attempted to convey.

There are a number of minor questions, some of fact, some of law, which the plaintiffs in error ask us to review. We have carefully done so, but it would serve no good purpose to say more about them than that we are satisfied with the conclusions to which the learned District Judge has come.

Affirmed.