# Richmond

CORONADO-INGLENOOK LAND AND DEVELOPMENT COMPANY, INCORPORATED v. GORDON W. BLACK AND THAIS S. BLACK.

March 11, 1957.

Record No. 4621.

Present, All the Justices.

The opinion states the case.

*William C. Worthington* and *Luther W. White, III* (*Jordan A. Pugh, III* and *Worthington & White*, on brief), for the plaintiff in error.

*Alan S. Mirman* (*Stant & Mirman,* on brief), for the defendants in error.

MILLER, J., delivered the opinion of the court.

The Coronado-Inglenook Land and Development Company, Inc., hereinafter called Coronado or the corporation, instituted action against Gordon W. Black and Thais S. Black, his wife, hereinafter called defendants, to recover compensatory and punitive damages for alleged willful and malicious breach of an option contract held by Coronado to purchase real estate owned by defendants. Upon conclusion of the evidence offered by Coronado, the court sustained a motion to strike, and upon return of verdict for defendants, judgment was entered accordingly. We granted Coronado an appeal.

The corporation was formed by home owners in the Coronado-Inglenook section of Norfolk county, and on September 3, 1954, it was granted a charter by the State Corporation Commission.

The certificate of incorporation named Gordon W. Black as president and as one of the directors of the corporation.

In its charter the corporation is expressly empowered to acquire, improve, own, and sell real estate in the city or county of Norfolk. A prospectus dated August 27, 1954, entitled "Explanation of Purposes of the Coronado-Inglenook Land and Development Corporation," was circulated among home owners in the Coronado-Inglenook area prior to incorporation. This writing, signed by Gordon W. Black on behalf of the proposed corporation, recited that it was assumed that the home owners in that section are interested in the purposes of the contemplated corporation. It then undertook to state the purposes of the corporation, and the reasons and necessity for its formation, and why the home owners should subscribe to its stock. The first and chief purpose was stated thus:

"The main purpose is to have all, or a high percentage, of the home owners to give the corporation 'first refusal' on the sale of any home in our section. In other words, the home owners will band together in a corporation and if one of the home owners desires to sell his home he will first go to the corporation (or in effect other land-owners), and offer his home first to the corporation before selling it to any other person."

Several typewritten pages of the prospectus were devoted to explanation of how this purpose would be accomplished. It proposed

that each home owner execute an option to the corporation under which he agreed that in case he desired to sell, he would notify the corporation of the name of any prospective purchaser and the amount offered for the owner's home. In this contemplated option or agreement the corporation was to be given the right to purchase the owner's property at the fair market value, and if that could not be agreed upon, provision would be made for appointment of arbitrators to determine the fair market value. Additional provisions to meet other difficulties and contingencies that might arise in case an owner desired to sell and received an offer from an outsider were set out at length in the prospectus. The ultimate object was to prevent acquisition of homes in the Coronado-Inglenook area by undesirable owners or lessees.

After incorporation of Coronado, more than $10,000 was paid into the corporation through subscription by home owners to its capital stock. A considerable number of them, including defendants, also executed option agreements under which the right was given to the company to acquire the owner's home at the same price and terms offered by another, or to purchase at the fair market value, which was to be determined by arbitrators selected in the manner designated. This option agreement also required the home owner to give the corporation a thirty-day written notice, stating the name and address of the proposed purchaser and the terms of the offer.

The business of the corporation was conducted from the defendants' home, 4216 Walcott Avenue, Norfolk, Virginia, and the property of several home owners, who had obtained offers from outsiders to purchase their homes, was acquired by the corporation through the exercise of its options.

In August, 1955, Gordon W. Black, a warrant officer in the United States Navy, received orders requiring him to move from the Norfolk area, and it became known to many of the home owners that defendants expected to be transferred elsewhere in the near future.

Under date of September 7, 1955, Thais S. Black wrote a letter to the corporation addressed and worded as follows:

> "4216 Walcott Avenue
> Norfolk 13, Virginia
> 7 September, 1955

"Coronado-Inglenook Land & Development Corporation
4216 Wolcott Avenue,
Norfolk 13, Virginia.

"Gentlemen:

"In accordance with the terms of our contract, you are hereby notified that Mr. M. F. Rogers has agreed to purchase for the sum of fourteen thousand, five hundred dollars the following described property on which you hold an option, to wit:

"Lots 10, 11 and 12, Block 4, Plot of Coronado, Norfolk, Virginia with all buildings and improvements thereon. This notice should be answered within thirty days or I shall consider the option waived by your consent.

"Yours truly,
Thais S. Black."

On September 7, 1955, Gordon W. Black read the letter, sealed it in an unstamped envelope and put it, as he says, on the desk in the room of his home from which the corporation business was transacted.

Sometime between September 7, 1955, and September 18, 1955, home owners in the neighborhood heard that defendants were going to sell their home and move away. Upon receipt of this information some of the interested persons held a meeting to which Black was invited. At the meeting, which was not a corporate meeting, Black stated that he was leaving and had to sell, but "would give the corporation a chance to buy his home." It does not, however, appear that he then mentioned the name of the prospective purchaser or the amount that he had been offered for his home.

On September 18, 1955, J. H. Bond, secretary of the corporation, visited defendants' home and received from Black some mail addressed to the corporation, but the letter from Thais S. Black was not delivered to Bond. On October 3, 1955, when Bond went to the Black home again, he found the letter of September 7, 1955. Neither defendant was present on this occasion. The letter, in an unstamped envelope addressed to "Coronado-Inglenook Land Dev. Corp., 4216 Wolcott Ave., Nor, Va.", was found in a desk drawer in the room used as the company's office. Bond opened the envelope and read the letter, and says that this was the first time that he had seen it.

After consulting counsel, Bond replied by a special delivery letter as follows:

"5 October 1955

"Gordon W. & Thais S. Black
4216 Wolcott Ave.
Norfolk, Virginia
Dear Mr. & Mrs. Black

"This is to advise you that your letter dated September 7 1955 is of no interest to the stock holders of the Coronado Inglenook Land & Development Company.

"Notice of sale or lease on any house under option to the Coronado Inglenook Land & Development Company must be written and duly mailed through the United States Postal System.

"Your delivery of your notice to sell to yourself, acting as an agent for the company is illegal.

"Respectfully,
J. H. BOND, JR.
Secretary."

On October 10, 1955, defendants consummated the sale of their home to Milton F. Rogers and wife for $14,500; however, two competent real estate appraisers testified respectively that its fair market value as of that date was $11,500 and $12,500.

Defendants admit that they executed the option and that it was valid but they say that they did not breach their contract. Their defense is two-fold. They assert that

(1) Black was an officer and agent of the corporation and the notice of September 7, 1955, received by him on that date was valid and timely notice to the corporation, and

(2) If legal notice did not get to the corporation until October 3, 1955, when Bond, the secretary, discovered and read the letter, then his reply of October 5, 1955, was a waiver of the corporation's rights under the option.

Black, as president and director, stood in a position of trust toward the corporation. His knowledge that he and his wife intended to sell to Rogers, and the written notice of September 7, 1955, received by him from his wife, were upon a matter clearly within the scope of his agency and authority. It was his duty to convey that information to the corporation, but it was to his interest to conceal it. Because of his personal and adverse interest, he withheld it to the detriment of his principal, and the corporation is not bound by his knowledge or the notice delivered to him by his wife. *Lee* v. *Elliott & Co., Inc.*, 113 Va. 618, 75 S. E. 146; *Lawhead* v. *Stewart*, 122 W. Va. 80, 7 S. E. 2d 350; *White* v. *Federal Deposit Ins. Corp.*, 122 F. 2d 770, cert. denied 316 U. S. 672, 62 S. Ct. 1043, 86 L. ed. 1747; 13 Am. Jur., Corporations, § 1113, p. 1038; 104 A. L. R. 1246; 4 M. J., Corporations, § 236, p. 781; 19 C. J. S., Corporations, § 1084, p. 621; 2 Am. Jur., Agency, § 379, p. 298.

The corporation did nothing to ratify Black's action. Nor did his

position confer upon him authority to act as the corporation's *sole* representative in the transaction, so that his knowledge, though he be interested in the matter, might be imputed to the corporation. *State Bank of Pamplin* v. *Payne,* 156 Va. 837, 159 S. E. 163; 2 Am. Jur., Agency, § 380, p. 300; 13 Am. Jur., Corporations, § 1114, p. 1039; 19 C. J. S., Corporations, § 1084, p. 623; 2 L. R. A. (N.S.) 994; 48 A. L. R. 464.

■ Did the corporation by its letter of October 5, 1955, waive its rights under its option to receive a thirty-day notice of intention to sell?

The language of the letter of September 7, 1955, leads to the inescapable conclusion that the date from which the thirty days was intended to be computed was September 7, 1955, which was also the date Black received and read it. In fact, defendants construed it as meaning that the thirty-day limitation should begin to run as of September 7, 1955, for they contend that the notice to Black on that date was legal and timely notice to the corporation. Thus Bond, the secretary, rightly construed the import of the notice, (which he did not, however, see until October 3, 1955) to be that the corporation had thirty days from September 7, 1955, in which to exercise its option to purchase. Such being the construction placed upon the letter by all interested parties, which does no violence to its language, it follows that the corporation, acting through its secretary, was entitled to reject the notice and treat it as ineffectual.

We do not construe Bond's letter of October 5, 1955, as a waiver of legal and timely notice. On the contrary, it was a statement that the notice of September 7, 1955, was insufficient and invalid. Notice through the United States mail was not necessary, and to that extent his letter makes an erroneous statement. Yet it clearly conveyed the meaning that the corporation considered and would treat the letter of September 7, 1955, as a non-compliance with defendants' obligation under the option. That it had a right to do for the required thirty days notice had not been given.

We agree that Bond's construction of the letter of September 7, 1955, was proper and correct. No valid notice was received by the corporation, nor did the corporation waive its right to receive a proper and timely notice.

The judgment appealed from is reversed and the case remanded for a new trial to be had not in conflict with the views herein expressed.

*Reversed and remanded.*