**Elfriede EITEL, Appellant,**

v.

**W. Horace SCHMIDLAPP, Appellee.**

**No. 71–1926.**

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1972.

Decided May 2, 1972.

Jerome K. Walsh, Jr., New York City (Walsh & Frisch, New York City, and Kuykendall, Hall & Whiting, Leesburg, Va., on the brief), for appellant.

Jack B. Stevens, Alexandria, Va. (Howard, Stevens, Lynch, Cake & Howard, Alexandria, Va., and John Howley and Hall, Dickler & Howley, Garden City, N. Y., on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and RUSSELL, Circuit Judges.

WINTER, Circuit Judge:

In this diversity action, plaintiff sought to require defendant to reconvey to her a parcel of land located in Virginia. Plaintiff's theory of recovery was that her agent, Halsey, exceeded his authority in the sale of the land and that defendant's agent, Bowman, fraudulently conveyed the property to the defendant. The district court found that plaintiff's agent had not exceeded his authority, but that even if he had, plaintiff's loss was not recoverable from the defendant. The court also found that Bowman was not the defendant's agent, but if he were, his fraudulent acts could not be imputed to the defendant. Nevertheless, the district court concluded that plaintiff could recover the land if she paid the defendant the amount of his investment in the land with interest from 1964.

We disagree. We think that plaintiff's agent clearly exceeded his authority in the sale of the land and that the purported conveyance to defendant, if not totally void, was at least voidable as to all but an innocent purchaser for value. De-

fendant had the burden of proving that he was an innocent purchaser for value who relied on plaintiff's agents' apparent authority, and he failed to meet it. Bowman was undoubtedly defendant's agent; and if defendant did not have actual knowledge of Halsey's lack of authority and of the fraud perpetrated on plaintiff, Bowman's knowledge was imputed to defendant. We, therefore, reverse the judgment of the district court and direct the entry of a judgment requiring defendant to reconvey the land to plaintiff upon plaintiff's reimbursing defendant solely for the taxes and like charges and assessments, if any, paid while title to the property was vested in him.

– I –

Plaintiff, Elfriede Eitel (nee Claas), is a citizen and resident of West Germany, who inherited $186,000 from her father in the United States. Through an agent, Halsey, she invested it by purchasing 692 acres of undeveloped land in Loudoun County, Virginia.

Two years later, Halsey and Bowman, a vice president and branch manager of Marine Midland Bank in New York, perpetrated a scheme to defraud plaintiff. Halsey sought and obtained plaintiff's written authorization to sell her Virginia real estate and to invest the proceeds in the stock of a Connecticut real estate corporation, Defco Industrial Park, Inc. (Defco). While Halsey had a general power of attorney to handle plaintiff's affairs, his written instructions, with regard to this transaction, were that he was authorized to sell the Virginia property at not less than a 20% net capital gain (i. e., a minimum price of $230,000), and to invest the proceeds in Defco under the explicit condition that plaintiff's liability arising from the purchase was to be limited to her assets in the United States. A copy of this written authorization was given to Bowman by Halsey.

Bowman, subverting his authority as a branch manager, set up on the books of the bank an entirely unauthorized loan to plaintiff for $250,000 and issued a bank check for that amount payable to her. On December 16, 1964, Bowman sent the check by messenger to Halsey in Washington, and Halsey cashed the check at a Washington bank and had that bank issue its check for the same amount, also payable to plaintiff. On the same day, Halsey conveyed plaintiff's 692 acres of Virginia land to a straw party and received back from him two deeds, one for 317 acres in the fictitious name "Parr Land Co." and one for the balance of 375 acres with the name of the grantee bank. At a later date, the Parr Land Co. deed was recorded.

Later the same day, Halsey went to New York, where he delivered the Parr Land Co. deed for 317 acres and the $250,000 Washington bank check to Bowman. The $250,000 check was then "invested" in Defco. Halsey received the Defco stock for plaintiff, and he issued $900,000 of Defco promissory notes to the former owners of Defco and to Bowman's bank, on which he endorsed plaintiff's personal guarantee. The following day $201,000 was transferred from Defco to a corporation controlled by Bowman. Subsequent to the closing Halsey received from Bowman $10,000 in cash and $50,000 in notes, purportedly in payment of a debt which Bowman owed Halsey. The $50,000 was represented by Bowman as a commission he had received for the sale. Halsey also retained unrecorded the blank deed for the balance of 375 acres of plaintiff's land.

Defendant and Bowman had been close personal friends and business associates for more than twenty-five years, and, in December, 1964, defendant was owed $140,000 by companies in which Bowman was the principal stockholder. Shortly before December 16, 1964, Bowman told defendant that a customer of Marine Midland Bank wanted to sell 317 acres of undeveloped land in Virginia for $100,000, and that if defendant would buy the land another customer of the bank would repurchase it from defendant six months later for $125,000. Defendant authorized Bowman to proceed with the proposed transaction and to handle all

of its details for him. Defendant had no dealings with Halsey, and he testified that he had no interest in the land or its value, that he did nothing to confirm what Bowman had told him, and that he relied completely upon Bowman—his only interest being in making the promised $25,000 "capital gain."

On Bowman's instructions, defendant signed a note for $100,000 at Bowman's bank and gave Bowman a check for the proceeds of the loan payable to Bowman's bank. Bowman told defendant that the check would be credited to the seller's (plaintiff's) loan account. Precisely how the check was applied is not clear, but, apparently, it and $150,000 of the $201,-000 taken out of Defco by Bowman were used to repay the fictitious $250,000 loan from Marine Midland to plaintiff.

Defendant did not receive the Parr Land Co. deed from Bowman until several weeks after he gave Bowman the $100,000. But, eventually, the deed was delivered to him, and he executed an assumed name certificate identifying Parr Land Co. as himself. This certificate was also recorded.

Plaintiff did not begin to discover what had taken place until August, 1965, when Halsey told her that her land had been conveyed and the Defco stock acquired. Shortly thereafter, she learned that Halsey had obligated her for payment of $900,000 of Defco notes, Defco being wholly insolvent. She came to New York and retained counsel, who was able to recover from Halsey the unrecorded blank deed for 375 acres of her land, but she was obliged to settle the claims of the Defco noteholders at a net cost to her of $41,000, plus substantial attorneys' fees.

In June, 1967, Bowman was indicted by a New York grand jury for numerous offenses, including making an illegal loan of Marine Midland's funds to defendant on March 18, 1965, misappropriation of $51,000 in connection with the Defco-Parr Land Co. transaction of December, 1964, and larceny of $32,450 from Defco after December 6, 1964. Bowman pleaded guilty to several counts of the indictment, including misappropriation of $51,000 in the Defco-Parr Land Co. land transaction.

– II –

Although the district court concluded that "plaintiff's . . . contention that Halsey conveyed her land without her authority is . . . without merit," we think the record establishes the contrary; and, to the extent that the district court's conclusion represents a finding of fact, the finding was clearly erroneous.

■ Halsey's written authority to act for plaintiff was clear and specific. He was to sell all of her land for not less than $230,000 and to buy Defco stock with the proceeds without obligating her for any amount in excess of what he received for the land. Certainly, the latter part of his authority was exceeded when he bought Defco stock and obligated her to pay a maximum amount of $900,000 by reason of her guarantee of the Defco note. But even if we agree, as we are inclined to do, that the two facets of Halsey's authorization were severable, we think that Halsey also exceeded his authority to sell her land and its concomitant implied authority to execute a deed in her name to the purchaser. First, there was not a sale of *all* of plaintiff's land. The parcel was split and only a portion was ultimately conveyed to defendant. Second, and more importantly, the initial conveyance was not a bona fide sale at all. Implicit in Halsey's instructions was the concept that there would be a conveyance to a third party for real consideration. The actualities were that Halsey conveyed to a straw party and the consideration was that supplied by the plaintiff herself by the unauthorized $250,000 loan made in her name at Midland Marine Bank. To the point of investment in Defco, Halsey never received any payment from an actual buyer; and when the proceeds of defendant's $100,000 loan were apparently applied to the reduction of plaintiff's unauthorized loan, the amount of "outside" money which was injected into the

transaction was at least $130,000 less than plaintiff had authorized Halsey to accept.

Virginia, whose law controls, strictly limits the authority of an agent to the letter of his instructions. Southern Ry. Co. v. Thomas, 182 Va. 788, 30 S.E.2d 575 (1944); Bank of Marion v. Spence, 155 Va. 51, 154 S.E. 488 (1930); Voyentzie v. Ryan, 155 Va. 604, 153 S.E. 688 (1930); Payne v. Jennings, 144 Va. 126, 131 S.E. 209 (1926); Halsey v. Monteiro, 92 Va. 581, 24 S.E. 258 (1896); Blair v. Sheridan, 86 Va. 527, 10 S.E. 414 (1889). See also, Watson v. Mose, 165 Va. 661, 183 S.E. 428 (1936). Here, we have no difficulty in concluding that Halsey repeatedly exceeded the authority given him by plaintiff.

## – III –

Many of the Virginia cases state that "[a]n act done by an attorney in fact which is not authorized by the power under which he acts is a nullity." Bank of Marion v. Spence, 155 Va. at 53, 154 S.E. at 489. See also, Blair v. Sheridan, supra; Southern Ry. Co. v. Thomas, supra. If applied literally, the rule would be dispositive of this case. Halsey failed to convey to a bona fide purchaser the entire parcel of land for the $230,000 as instructed, and hence plaintiff is entitled to be restored to her original position. Moreover, defendant cannot claim that he relied on the apparent authority of Halsey since he did not deal with Halsey, and Bowman, the only one who dealt with Halsey, had actual notice of Halsey's lack of authority. This analysis would be sufficient if this were simply a case of an unauthorized act of an agent. We cannot, however, disregard the fraud inherent in the entire transaction, and hence we think it appropriate that the rights of the parties also be examined in the context of fraud.

Although in the briefs and in argument we have been referred to no Virginia cases either explicitly accepting or rejecting the proposition, many courts have afforded protection to an innocent purchaser for value of real property notwithstanding that the grantor was induced to part with the property by fraud. These cases treat the innocent purchaser doctrine as a defense to the original grantor's recovery of the property with the burden of proof on the party claiming to be an innocent purchaser. See, e. g., Wright-Blodgett Co. v. United States, 236 U.S. 397, 35 S.Ct. 339, 59 L.Ed. 637 (1915); United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 26 S.Ct. 282, 50 L.Ed. 499 (1906); Colorado Coal & I. Co. v. United States, 123 U.S. 307, 8 S.Ct. 131, 31 L.Ed. 182 (1887); State v. Garcia, 77 N.M. 703, 427 P.2d 230 (1967); Merck v. Merck, 83 S.C. 329, 65 S.E. 347 (1909); Griffin v. Roanoke R. & Lumber Co., 140 N.C. 514, 53 S.E. 307 (1906). See also, Annotations, 57 A.L.R. 759, 48 A.L.R. 430. Indeed, plaintiff's brief states that under the law of Virginia, plaintiff is entitled to recovery if Halsey practiced fraud upon her unless defendant can prove that he was a bona fide purchaser for value without actual or imputed notice of fraud. We, therefore, prefer, as an alternative ground of decision, to consider whether defendant was a bona fide purchaser for value and not to rest solely on the conclusion that, being unauthorized, Halsey's deed to defendant, as attorney in fact for plaintiff, was a nullity.

## –IV–

To avail himself of the defense of an innocent purchaser for value, it was necessary for the defendant to show that he gave value for the property and that he had no knowledge, either actual or constructive, of any fraud or irregularities in the title. Although the plaintiff never received any payments from the defendant, we will, for the purpose of this opinion, assume that he gave value for the land. Nevertheless, it is the plaintiff's contention that Bowman was the defendant's agent and his knowledge was imputed to the defendant, thereby negating any claim that the defendant was an innocent purchaser for value.

The district court found that Bowman was not the defendant's agent. Bowman was not produced by either party at the trial, presumably because he was in custody under the state process in another jurisdiction. Plaintiff, therefore, was forced to rely solely on the testimony of defendant who was examined as an adverse witness. But that testimony inescapably proved agency.

Defendant testified that Bowman told him that a customer of the bank owned some property in Virginia and was anxious to sell it. Bowman said that defendant would have to pay $100,000 but that another customer of the bank, Harold DeFelice, had agreed to buy the property in six months and pay $125,000 for it. "Q. In other words, if you would take title to the property, you could sell it in six months and make $25,000 profit? A. That is correct."

When interrogated about how the transaction was consummated, defendant made the following conclusive admissions:

"Q Did you ask . . . [Bowman] to have the title examined to the property? A No, I did not. Q Did you ask him whether the owner was married or unmarried? A No, I did not. Q Did you go down to look at the property? A No, I did not. Q Did you ask him whether he had an appraisal of the property? A No, I did not. Q Were you interested in obtaining an appraisal of the property before you bought it? A I did not obtain it. Q Were you interested or were you concerned about its value? A No, I was not interested.

\* \* \* \* \* \*

Q You knew Harold DeFelice, didn't you? A Yes, I did. Q Did you go to see him, or call him, or write to him and inquire about this? A No, I did not. Q Were you concerned about whether he planned to buy this property back from you? A I was relying on Mr. Bowman's word. . . . Q And you were content to let him handle the transaction for you, were you? A Yes, I was. Q

And he was handling it for you, was he not? A Not as my agent. He was handling it. Q He handled it? A He handled the transaction. Q For you, didn't he? A For me, and for the seller, I assume. Q You didn't know that, did you? A No.

\* \* \* \* \* \*

Q You did rely on Mr. Bowman in this transaction to handle it for you, didn't you? A I did.

\* \* \* \* \* \*

Q Was it your understanding that you were going to get the deed from Dr. Eitel? A I didn't have any understanding. Q You didn't care where it came from? A No. Q Bowman was handling everything? A Right. Q And you were content to let him handle it? A That is correct.

\* \* \* \* \* \*

Q I gather that you left the entire transaction up to Mr. Bowman and he handled the whole thing, and whatever he did was agreeable with you? A Correct.

\* \* \* \* \* \*

Coupled with this testimony were the indisputable facts that defendant paid the $100,000 purchase price, accepted a deed to himself under the assumed name Parr Land Co., and has asserted vigorously throughout this litigation that good title is vested in him.

■ Notwithstanding defendant's disavowal, it is clear that Bowman was defendant's agent. An agency relationship arises from the agreement or consent of the parties that one shall act as the agent of the other; the intention of the parties is the significant element in determining whether the relationship exists. Ramsburg v. Sykes, 221 Md. 438, 158 A.2d 106 (1960). Moreover, the intention of the parties is to be found in all the facts and circumstances of the particular case, not solely in their self-serving descriptions of their status. Perkins v. Friedberg, 90 W.Va. 185, 110 S.E. 618 (1922). See also, Chicago Board of Trade v. Hammond Elevator

Co., 198 U.S. 424, 25 S.Ct. 740, 49 L.Ed. 1111 (1905). If defendant acquired title to a portion of plaintiff's land—and he has exerted every reasonable effort in this litigation to sustain his claim—it is too plain for argument that Bowman must have been his agent; the district court's contrary finding is clearly erroneous.

– V –

■ Ordinarily, the knowledge of an agent is imputed to his principal. As stated in 1 Restatement of Agency 2d, § 274, p. 595:

> The knowledge of an agent who acquires property for principal affects the interest of his principal in the subject matter to the same extent as if the principal had acquired it with the same knowledge . . . .

And *Comment a* to that section is quite specific:

> [I]f the agent acquiring property for the principal knows of the existence of an equitable interest of a third person in the subject matter, the principal takes it subject to the interests of the third person, since, as to such person, the acquisition is wrongful . . .

In Grogg v. Stevens, 6 F.2d 862, 863 (4 Cir. 1925), we treated Virginia law as in accord with this principle. See also, Page v. Page, 132 Va. 63, 110 S.E. 370 (1922); Schreckhise v. Wiseman, 102 Va. 9, 45 S.E. 745 (1903).

There is no positive evidence in this record that defendant had actual knowledge of the fraud practiced by Bowman on plaintiff. There are only the suspicions which arise from Bowman's and defendant's long and close association and friendship and defendant's unquestioning willingness to make a fast, substantial profit. But the record leaves no doubt that Bowman had full knowledge of the fraud, and thus defendant, as Bowman's principal, had imputed or constructive notice of the fraud, unless there is good reason why the general rule should not be applied.

■ The district court, while conceding the general rule of imputed knowledge, thought it inapplicable because Bowman "was engaged in an independent fraudulent act on his own account and the facts to be imputed to his principal would necessarily impair and defeat the agent's fraudulent enterprise . . . ." While the principle invoked by the district court is a recognized exception to the general rule charging the principal with facts known to this agent, it is inapplicable here, because this exception is, in turn, subject to another exception, within which this case falls, i. e., that the principal cannot claim the fruits of the agent's acts and still repudiate what the agent knew. Curtis, Collins & Holbrook Company v. United States, 262 U.S. 215, 222–224, 43 S.Ct. 570, 67 L.Ed. 956 (1923); Wilcox v. Goess, 92 F.2d 8, 10–11 (2 Cir. 1937); Monroe v. Harriman, 85 F.2d 493, 495 (2 Cir. 1936). Virginia recognizes this exception to the exception. Coronado-Inglenook Land & Develop. Co. v. Black, 198 Va. 772, 96 S.E.2d 737, 740 (1957); State Bank of Pamplin v. Payne, 156 Va. 837, 159 S.E. 163, 165 (1931). Moreover, the concealment of the true facts from defendant was not essential to Bowman's participation in the fraud or the success of the Halsey-Bowman fraudulent enterprise. Defendant, by his own admissions, could not have been less interested in the land, its value, the validity of title, the identity of the seller, etc. He was interested only in obtaining the profit of $25,000, and he was perfectly content to leave the details as to how he obtained it to Bowman. Under these circumstances, we cannot presume that Bowman failed to "disclose the real facts to his principal, because he was committing such an independent fraud that concealment was essential to its perpetration." Baker v. Berry Hill Mineral Springs Co., 112 Va. 280, 286, 71 S.E. 626, 628 (1911). Rather, we know defendant's disinterest. The exception to the general rule is inapplicable for this reason, also.

## – VI –

█ Since we have concluded that Halsey exceeded his authority, as well as engaged in actual fraud, that Bowman was defendant's agent and that Bowman's knowledge of the fraud and of Halsey's lack of authority was imputed to defendant, it follows that plaintiff is entitled to a return of her property, without reimbursing defendant for the consideration which he paid since he was not an innocent purchaser for value. Plaintiff concedes, however, that upon reconveyance, she should reimburse defendant for taxes and like charges and assessments, if any, on the land which defendant paid while title was vested in him. We agree that equity so requires, but add that interest on such sums should not be allowed.

Reversed and remanded.