. STOVALL, TRUSTEE, &C.,

. *v.*

HARDY AND OTHERS.

(*Special Court of Appeals of Virginia, February, 1879.*)

[Virginia Law Journal, 1879, p. 109.]

Vendor and Vendee—Sale of Land to Satisfy Judgment Lien—Case at Bar.

A vendor sells a tract of land, puts the vendee in possession, but retains the title to the whole tract to secure a part of the purchase money. This vendee then sells a portion of said tract to another on credit, puts him in possession, takes his bond for the purchase money, but having no title, attempts to make none. The first vendee then dies, and his vendor and another, qualify as his executors; the bond of the second vendee for the land purchased by him is assigned, with his knowledge, to one of the distributees of the estate of the first vendee (his vendor) by the executors, who, having paid the whole purchase money to the first vendor for the whole tract, then (November 11th, 1863), unite in a deed directly to the second vendee, for that portion of the land purchased by him, with knowledge of the outstanding unpaid bond. A judgment was obtained on this bond April 11th, 1866, and duly docketed April 20th, 1866, and in January, 1868, a bill was filed to subject the land, for which this judgment was, a portion of the purchase money, to its payment, asserting a vendor's lien thereon. On the 12th June, 1866, the said second vendee conveyed his whole property to a trustee for the benefit of creditors named in the deed. At June rules, 1869, another bill was filed against the said second vendee, his trustee and others, by another judgment creditor of the second vendee to enforce his judgment lien. On the 15th September, 1869, a decree was rendered in the two suits which had been consolidated for an account of the liens and their priorities; and three days thereafter, another decree was rendered for the sale of the said second vendee's real estate (no objection was made to the decree for sale before the report of liens and priorities was

made). There were a large number of judgments of the same class with that of the 11th April, 1866, for which a vendor's lien was claimed, amounting to more than the value of the whole real estate to be sold. The circuit court held that the holder of the said judgment of the 11th April, 1866, had no claim in equity to a vendor's lien for the amount of his judgment and dismissed his bill as to this claim: *held*:

> This was erroneous. The conveyance by the first vendor, and as executor of the first vendee, to the second vendee of the land purchased by him, and the acceptance of the same by said second vendee, without the knowledge or assent of the holder of the bond given for part of the purchase money, and with the knowledge that this land was held as 'security for said bond, was a fraud on the rights of the holder of the judgment rendered on that bond, and neither the said second vendee nor his judgment creditors, who occupy no better position with reference to the same, than he, can claim any benefit from said conveyance; and the funds derived from the sale of the land for the price of which said judgment was obtained, must be first applied to the payment of that judgment, and this is not in conflict with the provisions of § 1, ch. 119, Code of 1860, with reference to vendor's liens.

Same—Same—Attorney's Fees—Expenses of Suit—Case at Bar.

The commissioner of sale, in the consolidated suits, reported that he had paid out of the proceeds in his hands, attorney's fees, to two counsel who defended· the first suit, and another attorney's fee to the counsel who brought the second suit, amounting in all to about $400. This was excepted to by the plaintiff in the first suit, but allowed by the circuit court: *held*:

> This was also erroneous. "It is a general practice where a creditor suing for himself and others who may come in and contribute to the expenses of the suit, institutes proceedings for their common benefit, that those who derive a benefit shall bear their proportion of the expense and not throw the whole burden on one. This is equitable and just. But it only applies to those creditors who derive a benefit from the services of counsel in a cause, in which they are not specially represented by counsel. If a creditor has his own counsel in a cause, he cannot be required to contribute to the compensation of another. And this contribution must come from the creditors. The debtor cannot be charged with it. The law taxes him with certain costs for attorney and counsel fees, and the court cannot, directly or indirectly, impose upon him fees to the plaintiff's counsel, beyond what is provided by law."

The facts are sufficiently set forth in the opinion of the court.

*Jones & Bouldin* and *Marshall & Jones*, for the appellant.

*Goode* and *Page & Maury*, for the appellees.

From the circuit court of Mecklenburg county.

BARTON, J., delivered the opinion of the court.

Cephas Hardy, of the county of Mecklenburg, sold to Wm. C. Hardy a tract of land in the said county, placing him in possession, receiving a portion of the purchase money, and retaining the title as security for the remainder.

Subsequently, on the 29th March, 1859, Wm. C. Hardy sold 237½ acres, a part of this tract, to James T. Walker on credit, putting him in possession. As Wm. C. Hardy had received no deed, he made none to Walker, from whom no security was taken for the purchase money, the title, which was in Cephas Hardy, being reserved as a sufficient security.

Wm. C. Hardy died in November, 1859, leaving a will, of which one Wm. Smith and the said Cephas Hardy were appointed executors and duly qualified.

In their account settled in January, 1861, they credit the estate of their testator, Wm. C. Hardy, as of the 6th December, 1859, with the amount due by Walker, balance on land, $2,137.50. They charge the estate as of the 23d December, 1859, with the sum of $2,646.35 paid to Cephas Hardy per receipt, and, as of the 18th August, 1860, with cash paid to Cephas Hardy (land bond), the sum of $2,569.75. Walker had not, in fact, paid the sum of $2,137.50 which they credited to the estate of Wm. C. Hardy, but only a part thereof, for which they took from him on the 1st January, 1863, his bond for $1,250.90, with interest from 1st January, 1861,

for balance on land, payable to themselves as executors of Wm. C. Hardy.

This bond was passed by the executors early in 1863, in their final settlement of Wm. C. Hardy's estate, to John M. Hayes, who was entitled, under the provisions of Wm. C. Hardy's will, to a share of his estate. Walker was fully nformed of this transfer, as he paid to Hayes on the 15th June, 1863, $72 95–100 on account of this bond, which was duly credited thereon. Cephas Hardy and wife, by deed dated the 11th November, 1863, conveyed the legal title to the 237½ acres to Walker. A judgment was obtained on this bond on the 11th April, 1866, which was docketed on the 20th, in the name of Cephas Hardy, surviving executor of Wm. C. Hardy, suing for the benefit of Stovall, trustee, &c., to whom it had passed by successive transfers from Hayes.

By the report of the commissioner, it appears that the class of judgment liens, in which this was included, amounted, with costs and interest to the 20th May, 1870, to $4,070.95, of which this judgment amounted to the sum of $1,890.22.

Walker by deed, dated the 12th June, 1866, conveyed all his real estate in Mecklenburg county, including this 237½ acres, to Richard E. Walker in trust, to secure certain debts in the deed set forth.

In January, 1868, Stovall filed his bill against James T. Walker and others to subject the 237½ acres of land to the payment of the bond given for the unpaid purchase money. After proceedings were had in the case, which it is unnecessary to refer to specifically, as they do not concern the questions now in controversy, the cause came on to be heard on the 18th September, 1859, when the court, being of the opinion that the plaintiff, Stovall, had no just claim in equity to a vendor's lien on the 237½ acres, dismissed so much of

his bill as sought to enforce such lien, and retained the cause as to the other matters in controversy between the parties.

At June rules, 1869, a bill had been filed by Joseph H. Jones, administrator of Wm. Jones, suing for the benefit of D. S. Marrow against James T. Walker, his assignee in bankruptcy and others, to enforce the lien of a judgment for $122, with interest from 16th November, 1860.   On the 15th September, 1869, a decree was entered on the bill taken for confessed as to all the defendants, for an account of the subsisting judgment liens, and of the real estate with its annual rents and profits.   And on the 18th September another decree was entered, directing a sale of all the real estate of which the said Walker had been seized, which was subject to the judgment liens.   No objection appears to have been made to the decree for sale before the liens and their priorities were ascertained.

The commissioner returned his report of liens, in which he seems to have classified the judgments according to the dates at which they were docketed, instead of the dates at which they were rendered, as he should, all having been docketed in due time, and before the recordation of the deed of trust.

At May term, 1870, the commissioner of sale reported that he had sold the real estate on the 15th December, 1869, upon the terms prescribed in the decree of sale, viz., one-third in cash, and the remainder at six and twelve months, for the gross sum of $3,540.25.   He returned with his report of sale an account of the cash received by him and of disbursements made, in which were included the payment of $180 as the attorney's fee, and commissions to the counsel for the plaintiff Jones, administrator, &c. ; and the payment to two counsel who had defended the suit brought by Stovall, trustee, &c., for their services in that suit, one hundred and

fifty dollars to each, amounting in all to four hundred and eighty dollars of counsel fees, paid by him. To these payments Stovall excepted.

These two cases having been consolidated, the court, on the 3d June, 1870, overruled the exception, confirmed both reports, and ordered a distribution of the fund in hand, and that the commissoner of sale should proceed to collect the bonds for the deferred payments as they fell due, and make report to the court.

From the decree entered on the 18th September, 1869, in the case of Stovall, trustee, v. Hardy and others, dismissing so much of the plaintiff's bill as sought to enforce a vendor's lien, and that entered on the 3d June, 1870, in the two cases consolidated, overruling the exception to the payment of counsel fees by the commissioner of sale, an appeal has been allowed, which presents the questions we have to consider.

The question as to the existence of the vendor's lien in this case, is free from any complication by reason of the ·deed made on the 12th June, 1866. The gross proceeds of the sale made under the decree of September. 18th, 1869, which was confirmed without objection, were less than the amount of the judgment liens having priority over that deed ; and the trustee and beneficiaries under it, even if they were purchasers without notice, took a mere naked legal title, without any real or valuable interest. The subject will, therefore, be considered without reference to that deed, as if it had not been made.

Nor do I think it was affected by the 1st sec. chapter 119, Code of 1860, p. 567, which provides: "If any person hereafter convey any real estate, and the purchase money, or any part thereof, remains unpaid at the time of the conveyance, he shall not thereby have a lien for the unpaid pur-

chase money, unless such lien is expressly reserved on the face of the conveyance.''

Cephas Hardy made no conveyance to his vendee, Wm. C. Hardy, but he retained the title as security for the purchase money. When that purchase money was paid to him out of the estate of Wm. C. Hardy, he held the title as trustee for those entitled to the estate of Wm. C. Hardy, under the will of which he was the executor. The credit in the executorial account of Wm. C. Hardy's estate, of the balance of the purchase money due by Walker, was only formal and made for the purpose of settlement between the executors and devisees of Wm. C. Hardy. Cephas Hardy, the executor and vendor having the legal title, and Walker the purchaser and debtor, knew that the purchase money had not been paid, that the title was retained as security for its payment, and that the debt had been assigned to one of the devisees on account of his share in the estate.

By conveying that legal title to Walker, Cephas Hardy committed a breach of trust, in which Walker fully participated, for he knew that Cephas Hardy held the bare, naked legal title, and as trustee for the security of another party, that his own bond for the unpaid purchase money had been transferred with all the legal incidents and securities to one of the *cestuis que trust*. The conveyance of the legal title by Cephas Hardy, and its acceptance by Walker, without the assent of the party for whose benefit and security it was held, was a breach of trust and a fraud upon his rights, whether actual fraud was intended or not, which neither Walker nor judgment creditors of his, who occupy no better position than himself, can claim any benefit from.

I think that as to the vendor's lien that deed should be utterly disregarded in this case, and that the net proceeds of the sale of the 237½ acres should be applied first to the discharge of the unpaid purchase money, and that the decree

dismissing so much of the plaintiff's bill as sought to enforce his lien for that unpaid purchase money was erroneous.

It is a general practice to require, when one creditor, suing for himself and others, who may come in and contribute to the expenses of suit, institutes proceedings for their common benefit, that those who derive a benefit shall bear their proportion of the expense and not throw the whole burden on one. This is equitable and just. But it only applies to those creditors who derive a benefit from the services of counsel in a cause in which they are not specially represented by counsel. If a creditor has his own counsel in a cause, he cannot be required to contribute to the compensation of another. And this contribution must come from the creditors. The debtor cannot be charged with it. The law taxes him with certain costs for attorney and counsel fees; and the courts cannot, directly or indirectly, impose upon him fees to the plaintiff's counsel beyond what is thus provided by law—the payment to the counsel for the plaintiff Jones, adm'r, &c., out of the fund, cannot be supported by any law or practice with which I am acquainted.

And I am at a loss to conceive upon what ground the payment to the counsel for the defendants in the case of Stovall v. Hardy can be supported. The plaintiff in that case is required to pay his proportion of the counsel fees, amounting to $300, for resisting his claim. There are cases of such character, as when a husband sues for a divorce, that the plaintiff is required, upon principles of public policy, to pay reasonable counsel fees for the defence.

This is no such case. It is merely the ordinary case of a conflict of claims, and one party is taxed out of his recovery to pay the counsel for the opposite party. I see nothing to justify it. The exception to those payments of the commissioner of sale should have been sustained.

Both decrees should be reversed so far as they conflict

with the views herein expressed, and the cause remanded for further proceedings in conformity therewith.

WINGFIELD, P., and McLAUGHLIN, J., concurred in the opinion of BARTON, J.

Decrees reversed.