HENRY E. I. duPONT, ET AL.

V.

V. R. SHACKELFORD, JR., ET AL.

Record No. 850443

June 10, 1988

Present: All the Justices

*Morris L. Weisberg (Robert W. Wooldridge; Marvin Comisky; Taras M. Wochok; Blank, Rome, Comisky & McCauley*, on briefs), for appellants.

*Joseph C. Kearfott (Joseph C. Carter, Jr.; Waller H. Horsley; Richard H. Burton; Atwell W. Somerville; Blain T. Phillips; Daniel F. Lindley; M. Scott Hart; Alexander Wellford; C. Daniel Stevens; John W. Patterson; Leonard S. Togman; S. Page Higginbotham; Hunton & Williams; Somerville, Moore & Somerville, Ltd.; Potter, Anderson & Corroon; Mays, Valentine, Davenport & Moore; Christian, Barton, Epps, Brent & Chappell; Ezell, Mendez & Patterson; Higginbotham & Higginbotham*, on briefs), for appellees V. R. Shackelford, Jr.; David C. Rittenhouse and William duPont III, Executors of the Estate of Marion duPont Scott; Delaware Trust Company, Trustee; Jean duPont Shehan; Marion duPont McConnell; Susan McConnell Rinehart; James H. T. McConnell, Jr.; Evelyn duPont Donaldson; and Linda D. Donaldson.

No briefs or arguments for appellees National Trust for Historic Preservation in the United States; Mary Sue Terry, Attorney General of Virginia; Stephanie Marion Rinehart; Caroline Tyler Rinehart; Judith D. Jordan; Charlotte A. D. Maher; Elise D. Bulger; Jennifer A. McClellan; Erica B McClellan; Matthew B. McClellan; Hilary L. Maher; Meredith Snow Maher; Jordan N. H. Bulger; Andrew B. Bulger; Adam C. Bulger; William duPont III; William duPont IV; Beverly Austin duPont; and William Henry duPont.

THOMAS, J., delivered the opinion of the Court.

Henry E. I. duPont, his brother John E. duPont, and their respective attorneys, Blank, Rome, Comisky & McCauley of Philadelphia, Pennsylvania, and Taras M. Wochok and Associates, Ltd., of Paoli, Pennsylvania (collectively the Claimants), appeal a decision of the trial court which denied their claims for the payment of attorneys' fees and expenses from the estate of Marion duPont Scott. In our opinion, the trial court correctly decided the issue. Therefore, we will affirm its judgment.

Mrs. Scott died on September 4, 1983, in Orange County at her home, Montpelier, the historic former home of President James Madison. She had acquired Montpelier in January 1928 on the death of her father, William duPont, Sr. By will, he left all his realty and most of his personalty at Montpelier to Mrs. Scott. But William, Sr.'s will also provided that if Mrs. Scott should die without issue, then all the property left to her would pass to her brother, William, Jr., or, if he were dead, to William, Jr.'s children.

Mrs. Scott died without issue. Her brother, William, Jr., had predeceased her. But William, Jr.'s children, Henry E. I. duPont, John E. duPont, William duPont, III, Evelyn duPont Donaldson, and Jean Ellen duPont Shehan were living at the time of Mrs. Scott's death. Thus, under the terms of William, Sr.'s will, William, Jr.'s children became the owners of the realty and certain of the personalty at Montpelier.

In her will, Mrs. Scott sought, among other things, to control the disposition of Montpelier. In Article Two of her will, she commented on the historic importance of Montpelier as the former home of President Madison. She wrote that "it is appropriate that [Montpelier] be owned by an organization which will restore the mansion house in such manner as to conform as nearly as possible with the architectural pattern which existed when said property was owned and occupied by President Madison." She expressed the desire that Montpelier be acquired by the National Trust for Historic Preservation in the United States (the National Trust). To help effectuate her desire, Mrs. Scott urged her nephews and nieces to give or sell their interest in Montpelier to the National Trust; she bequeathed ten million dollars to the National Trust to be used by it to purchase, if necessary, the interests of her nephews and nieces; and she provided that if any nephew or niece

should fail to give or sell his or her share in Montpelier to the National Trust, "then any such nephew or niece, and the descendants of any such nephew and niece shall forfeit any right they may have to income and principal of the Trust established by Marion duPont Scott . . . June 7, 1960 . . . and the Trustee of said Trust is directed to administer and dispose of the assets in said Trust as if said parties never existed." At the time of Mrs. Scott's death, the corpus of the trust referred to in her will amounted to nearly 100 million dollars.

On January 6, 1984, Henry E. I. duPont and his brother John E. duPont, along with eighteen children, grandchildren, and adopted children of Henry, filed a seven-count, 34-page bill of complaint against the executors of Mrs. Scott's estate, V. R. Shackelford, Jr., David C. Rittenhouse, and William duPont, III; against the Delaware Trust Company; against the National Trust; and against the Attorney General of Virginia. The bill of complaint attacked Mrs. Scott's estate plan. Count I alleged that Article Two of Mrs. Scott's will was "unlawful and void." Count II alleged that a certain codicil which removed John as an executor was invalid because Mrs. Scott had lacked the requisite mental capacity and had been subject to undue influence. Count III alleged that the commissions and fees provided to V. R. Shackelford, Jr., in the will were excessive and unreasonable. Count IV attacked as unlawful and violative of public policy Mrs. Scott's decision to exclude as beneficiaries adopted children and children of adopted children. Count V alleged that Mrs. Scott's executors had no right to possess the realty at Montpelier. Count VI alleged that Mrs. Scott's executors had no right to possess the personalty at Montpelier. Count VII alleged that Mrs. Scott had allowed Montpelier to fall into disrepair and demanded $1,000,000 to make necessary repairs. The bill of complaint concluded with a demand for reasonable attorneys' fees, costs, and disbursements and with an invitation to others with interests parallel to those of the plaintiffs to intervene in the suit as plaintiffs.

Despite the invitation, no one intervened on the plaintiffs' side of the case; all who intervened did so on the defendants' side. Moreover, two of the named plaintiffs repudiated the suit and, at their request, were dismissed as parties.

More significantly, however, all the named defendants responded by counsel. Further, all the individuals who intervened did so by counsel. Thus, after a flurry of responsive pleadings, the

lines were drawn leaving all but two of the original plaintiffs as plaintiffs and leaving everybody else as defendants, with all parties represented by counsel.

The record in this case is filled with motions, pleadings, memoranda, letters, exhibits, and other papers, all of which demonstrate that counsel for the respective parties actively pursued the disposition of the case. Early in the proceedings, the trial court recognized that the suit had the potential for becoming protracted and expensive litigation. The trial court, concerned about time, expense, and the effect of the suit upon the harmony of the family, urged all counsel to participate in settlement discussions. The trial court asked for and received frequent reports on the progress of settlement efforts. Eventually, settlement was achieved.

On October 15, 1984, the parties executed a formal settlement agreement. In that agreement, the parties settled many major issues but agreed that the payment of attorneys' fees and expenses from the estate was reserved for future resolution. The provision concerning attorneys' fees reads, in pertinent part, as follows:

> There is no agreement by the parties that counsel for any party other than counsel for the Executors and for the Trustees are entitled to attorneys' fees. However, it is agreed by all parties that any party or counsel for any party hereto, other than the Executors or the Trustee, has the right, on or before January 1, 1985 and not thereafter, to apply to the Virginia Court for an award of expenses, including attorneys' fees; and any party hereto, including the Executors or the Trustee, shall have a right to contest the entitlement of any party or counsel for any party hereto to such expenses, or the reasonableness thereof.

Pursuant to the foregoing provision, on December 7, 1984, Henry E. I. duPont and the Blank-Rome firm petitioned for an award of attorneys' fees and for the reimbursement of expenses. The law firm sought a fee of "not less than $1,000,000 on account of its successful efforts in the litigation in question." Henry sought an award of "$39,630 as reimbursement for costs of litigation paid by him." The Blank-Rome firm represented that its lawyers had spent 1,890 hours on the case and had billed Henry $347,820 for their work. In an affidavit filed with the petition, Henry averred that he had paid, at the time of the petition, $262,999 in fees.

Henry also averred that he had paid out-of-pocket expenses of the law firm totaling $39,629.

On December 27, 1984, John E. duPont and the Wochok firm filed their fee petition. In their petition, John sought reimbursement of $118,500 in fees he had paid to the Wochok firm and reimbursement of expenses paid totaling $2,067.89. The Wochok firm sought fees in the amount of "$250,000 or such other amount as the Court deems appropriate for its successful efforts in obtaining the agreed construction of the Will which occurred only because of the instant litigation and for the creation of a fund which inures to the common benefit of all." In an affidavit filed with the petition, it was averred that $7,000 of the $118,500 in fees paid by John went to the Blank-Rome firm for services rendered.

The total claim for fees and expenses against the estate amounted to "at least" $1,410,197.

## I

The Claimants first contend that the trial court erred by deciding the fee and expense issue solely on the basis of Virginia law. According to the Claimants, the trial court should have "considered" Delaware law and federal law in resolving the issue. They argue that because the agreement settled a Delaware suit as well as the Virginia suit, exclusive adherence to Virginia law was improper. They provide no explanation for their contention that federal law is involved in this case. Indeed, the Claimants do not actually contend that there is any conflict of laws among Virginia, Delaware, and the United States. We reject this argument as unfounded.

Mrs. Scott was a domiciliary of Virginia, the real property in dispute is in Virginia, the Scott estate is being administered under the jurisdiction of the Virginia courts, and the agreement calls for any fee applications to be made to the Virginia court having jurisdiction over the estate. Under these circumstances, Virginia's law applies exclusively. *See Denny* v. *Searles*, 150 Va. 701, 733, 143 S.E. 484, 494 (1928). We hold that the trial court did not err in applying Virginia law exclusively.

## II

■ The Claimants next argue that the trial court erred in refusing to pay their expenses and fees in light of the fact that by their efforts, the estate was benefitted in monetary and nonmonetary ways. For example, with regard to monetary benefits, the Claimants contend that because of their efforts, V. R. Shackelford, Jr., agreed to accept a maximum payment of $1,600,000 for his services in lieu of the approximately $4,814,616 in commissions and fees he would have been entitled to under Mrs. Scott's will. The Claimants argue that the $3,214,616 difference between what Shackelford actually received and what he would have received constitutes a common fund from which they should be paid.

Virginia has recognized the common fund doctrine since 1879. *Stovall* v. *Hardy*, 1 Va. Dec. 342 (Special Ct. App. 1879). *Stovall* did not concern a decedent's estate; it concerned creditors' rights, but the common fund doctrine applies in both contexts. In *Stovall*, the special court of appeals wrote as follows:

> It is a general practice to require, when one creditor, suing for himself and others, who may come in and contribute to the expenses of suit, institutes proceedings for their common benefit, that those who derive a benefit shall bear their proportion of the expense and not throw the whole burden on one. This is equitable and just. But it only applies to those creditors who derive a benefit from the services of counsel in a cause in which they are not specially represented by counsel. *If a creditor has his own counsel in a cause, he cannot be required to contribute to the compensation of another.*

*Id.* at 349 (emphasis added). The emphasized language controls the instant case. In Virginia, we have never permitted a common fund recovery where to do so would require a party who was represented by counsel to contribute to the counsel fees of another. *See, e.g., Edmonds* v. *Mapp*, 175 Va. 73, 75, 7 S.E.2d 106, 107 (1940); *Greenbrier Joint Stock L. Bk.* v. *Opie*, 165 Va. 334, 341, 182 S.E. 255, 258 (1935); *Dunlop* v. *McGehee*, 139 Va. 643, 650, 124 S.E. 199, 201 (1924); *Stuart* v. *Hoffman*, 108 Va. 307, 311, 61 S.E. 757, 759 (1908); *Stoneburner & Richards* v. *Motley*, 95 Va. 784, 790, 30 S.E. 364, 366 (1898).

■ There is good reason for the rule to which we adhere. The essence of the common fund doctrine is that it would be unfair to

permit one party to retain counsel, to file suit, to secure a benefit that all will share, yet to leave the full cost of the effort upon the one party who initiated the suit while others who will share the proceeds make no contribution. If others are to sit idly by and reap the benefits of one litigant's labors, the idle parties should share in the cost of those labors. In short, the common fund doctrine is aimed at preventing "free rides." *See* J. P. Dawson, *Lawyers and Involuntary Clients: Attorneys' Fees From Funds*, 87 Harv. L. Rev. 1597, 1647 (1974).

But a different situation obtains where all parties are represented by counsel who participate in the proceeding. In that case, it cannot be said that a party who pays for his own representation in the proceeding has taken a "free ride." Nor, in that case, can it be said that the result was obtained solely by the efforts of the party who initiated the proceeding. On the contrary, the final result derives from the contributions of all who are involved in the case. *Id.*

■ In this case, as noted, all parties were represented by counsel. Moreover, the settlement was reached through the combined efforts of all parties. There were no "free rides." We hold that the trial court did not err in refusing the claims for fees and expenses under the common fund doctrine.

### III

■ The trial court also correctly rejected the Claimants' arguments that they were entitled to the payment of fees and expenses from the estate based on the doctrine of judicial instructions. The parties to this appeal dispute the existence of this doctrine in Virginia. However, we need not resolve that dispute to dispose of this argument. This is so because the trial court concluded, as a matter of fact, that the Claimants never sought judicial instructions. In ruling from the bench on this point, the trial court spoke as follows: "I find that the thrust of the case by John and Henry duPont was to have Mrs. Scott declared intestate, was to overthrow her will. In the opinion of the Court that isn't seeking judicial instructions."

We agree with the trial court. Nowhere in the bill of complaint are judicial instructions requested. Indeed, as pointed out at the beginning of this opinion, the thrust of the bill of complaint was to destroy Mrs. Scott's estate plan. We hold that there was no re-

quest for judicial instructions and, therefore, no recovery can be had by Claimants on that theory.

## IV

Our disposition of the foregoing matters makes it unnecessary for us to address any other arguments or issues advanced by the parties. For all the foregoing reasons, the judgment of the trial court will be affirmed.

*Affirmed.*