935 F.2d 666
 UNITED STATES of America, Plaintiff,
v.
Stephen Craig TOBIAS; Constance S. Tobias, Defendants-Appellants,
Harry I. Johnson, Jr.; Defendant-Appellee,
Jolene T. Johnson; George Moore, Trustee, Appellees,
and
396.31 Acres of Land, More or Less, Situated in the County
of Roanoke, State of Virginia, Defendant.
 No. 90-3124.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 6, 1991.
Decided June 11, 1991.
 
 James Robert Cromwell, argued (George I. Vogel, II, Wilson, Vogel & Creasy, Roanoke, Va., on brief), for defendants-appellants.
 Melissa Warner Scoggins, argued (William J. Creech, Jr., Gentry, Locke, Rakes & Moore, Roanoke, Va., on brief), for appellees.
 Before HALL, Circuit Judge, CHAPMAN, Senior Circuit Judge, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 K.K. HALL, Circuit Judge:
 
 
 1
 Stephen and Constance Tobias appeal an order of the district court awarding over $11,000 in costs and attorney's fees to Harry and Jolene Johnson, under the common fund doctrine, after the Johnsons vigorously, though unsuccessfully, contested the Tobias' title to part of a tract of land condemned by the United States. We reverse.
 
 I.
 
 2
 In November, 1984, the United States condemned 369 acres of land in Roanoke County, Virginia, for development of the Appalachian Trail. The complaint named appellees Harry and Jolene Johnson (collectively "Johnson") as the property owners. In September, 1985, appellants Stephen and Constance Tobias ("Tobias"), believing that they owned part of the tract, intervened.
 
 
 3
 Tobias asserted title to 219 of the condemned acres, while Johnson claimed all 369. Tobias held a paper title traceable to a grant senior to Johnson's, but Johnson nonetheless maintained that he and his predecessors had established title by adverse possession.
 
 
 4
 After Tobias' intervention, Johnson's counsel continued to negotiate unilaterally with the government to reach a settlement price for the 369 acres. In addition, Johnson incurred over $13,000 in appraisal costs between June and November, 1986. In March, 1986, the government had offered $329,800; by November, it was up to $425,000; Johnson paid over $5,000 for his counsel's efforts during this period.
 
 
 5
 Tobias then got into the negotiating act. His paper title deriving from the senior grant clouded 42 other acres the government had already acquired nearby. He offered to quitclaim these 42 acres to the government for an increased settlement offer. The government raised its offer to $475,000, to which all the parties agreed.[1] The government deposited the sum in court, and left the parties to fight over it.
 
 
 6
 And fight they did. After a year and a half of discovery, a four-day jury trial was held in May, 1988. The jury found that Tobias had superior paper title to 219 of the acres, and that Johnson had not defeated the Tobias title through adverse possession. However, Johnson moved for judgment notwithstanding the verdict, and the district court granted it, awarding Johnson the entire $475,000. United States v. 369.31 Acres, 696 F.Supp. 185 (W.D.Va.1988).
 
 
 7
 Tobias appealed, and this court reversed. United States v. Tobias, 899 F.2d 1375 (4th Cir.1990). Judgment below was entered accordingly, splitting the award between Johnson and Tobias proportionally (about 41% to Johnson and 59% to Tobias).
 
 
 8
 Notwithstanding his defeat, Johnson moved for attorney's fees and costs in the district court, asserting that he had increased the value of a common fund through his own efforts, and that Tobias, as an eventual beneficiary of those efforts, should defray part of those fees and costs. After a hearing, the district court awarded Johnson over $11,000, purportedly 59% of Johnson's expenses attributable to raising the government's offer from $329,800 to $425,000.
 
 
 9
 Tobias appeals.
 
 II.
 
 10
 The common fund doctrine is a narrow equitable exception to the "American rule" that parties bear their own costs of litigation. The first, and archetypal, common fund case was Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1882). In Greenough, certain trustees had collusively sold land held as security for a bond issue at prices far insufficient to assure reserves to pay off the bonds. A single bondholder, Vose, brought suit on behalf of himself and all bondholders to set aside the transfers and appoint a receiver to manage the land. Vose won the suit after eleven years of litigation. Though he had borne all of the expense of the suit, he was entitled to only part of the award. Vose sought payment of his fees and costs from the yet-undistributed trust estate. The Supreme Court held that:
 
 
 11
 He has worked for [other bondholders] as well as for himself; ... [t]hey ought to contribute their due proportion of the expenses which he has fairly incurred. To make them a charge upon the fund is the most equitable way of securing such contribution.
 
 
 12
 105 U.S. at 532.
 
 
 13
 Just four years later, the Supreme Court applied the common fund doctrine in a different context and provided the basic rule of law on which this case turns. In Hobbs v. McLean, 117 U.S. 567, 29 L.Ed. 940 (1886), Hobbs, as assignee of a bankrupt, obtained a judgment in the United States Court of Claims. McLean and Harmon, who believed that the sum Hobbs had recovered rightly belonged to them, and who feared Hobbs would distribute the money to the bankrupt's creditors, brought suit. Hobbs denied that McLean and Harmon had any right to the money, but on final hearing, Hobbs lost. Hobbs then moved for costs and attorney's fees for his efforts in securing the fund in the Court of Claims. The circuit court denied this motion, and the Supreme Court affirmed:
 
 
 14
 We see no reason why [McLean and Harmon] should pay [Hobbs], who, instead of aiding them in securing their rights, has been an obstacle and obstruction to their enforcement. The services for which the defendant seeks pay from the plaintiffs were not rendered in their behalf, but in hostility to their interest. When many persons have a common interest in a trust property or fund, and one of them, for the benefit of all and at his own cost and expense, brings a suit for its preservation or administration, the court of equity in which the suit is brought will order that the plaintiff be reimbursed his outlay from the property of the trust, or by proportional contribution from those who accept the benefits of his efforts. But where one brings adversary proceedings to take the possession of trust property from those entitled to it, in order that he may distribute it to those who claim adversely, and fails in his purpose, it has never been held, in any case brought to our notice, that such person had any right to demand reimbursement of his expenses out of the trust fund, or contribution from those whose property he sought to misappropriate.
 
 
 15
 117 U.S. at 581-82 (citations omitted). Though the law of "common funds" has developed in more detail over the years, those two old Supreme Court cases state the fundamental equitable considerations. Over twenty-five years ago, Judge Haynsworth summed up the doctrine for this court:
 
 
 16
 [The common fund doctrine] is founded upon the principle that when one who, while establishing his own claim, also establishes the means by which others may collect their claims, a chancellor in equity may award counsel fees to the trail blazer out of the property made available for the satisfaction of all claims. The principle is applied so that the one who led in hewing the path to victory is not left saddled with extensive attorney's fees, which need not be incurred by his more timid fellows who held back until the fruits of the pioneer's success were laid before them.
 
 
 17
 Gibbs v. Blackwelder, 346 F.2d 943, 945 (4th Cir.1965); see Boeing Co. v. Van Gemert, 444 U.S. 472, 479, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980) (common fund expense reimbursement appropriate "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf"). Johnson neither "hewed the path to victory" for Tobias nor "laid the fruits of success" before him. He tenaciously fought to deny Tobias a penny of the condemnation award. A party may not recover and try to monopolize a fund, but then, failing in the attempt, declare it a "common fund" and obtain his expenses from those whose rightful share of the fund he sought to appropriate.
 
 
 18
 Johnson tries to circumvent the general rule that "common fund" reimbursement is unthinkable when the parties have been adverse by lamely pointing out that Tobias and he are both defendants in the condemnation suit. We will not adopt such a mechanical test. This case was a pure title dispute between the "co-defendants." No equitable doctrine will ignore the reality of the controversy by looking only to which side of the "v" the disputants are on.
 
 
 19
 Aside from the adversity of the parties, there are other reasons why Johnson should not equitably recover fees and costs. Generally, a fund claimant who is represented by counsel, as Tobias has been, is deemed not to have taken a "free ride" on the efforts of another's counsel. Vincent v. Hughes Air West, Inc., 557 F.2d 759, 771 (9th Cir.1977); Haynes v. Rederi A/S Aladdin, 362 F.2d 345, 351 (5th Cir.1966), cert. denied, 385 U.S. 1020, 87 S.Ct. 731, 17 L.Ed.2d 557 (1967); Nolte v. Hudson Navigation Co., 47 F.2d 166, 168 (2d Cir.1931); duPont v. Shackelford, 235 Va. 588, 369 S.E.2d 673, 677 (1988). There are exceptions to this rule, but they involve express or implied agreements as to lead counsel for a group or extraordinary disparity in counsels' efforts. Vincent, 557 F.2d 759, 771-72; Doherty v. Bress, 262 F.2d 20 (D.C.Cir.1958), cert. denied, 359 U.S. 934, 79 S.Ct. 649, 3 L.Ed.2d 636 (1959). Tobias' attorney may not have negotiated along with Johnson's during the time the government's offer rose from $329,800 to $425,000. On the other hand, he negotiated the quitclaim deed deal that got the price up to $475,000. Tobias received no set-off in the fee award for the benefit he thus gratuitously conferred on Johnson.
 
 
 20
 Finally, when Johnson took it upon himself to negotiate with the government, he knew full well that Tobias was in the case, represented, and claimed an interest in the award. He knew he could not settle with the government without Tobias' consent or a pre-settlement trial of title, but he nonetheless spent money unilaterally, confident of, and ready to exhaust legal recourse to secure, total victory. Tobias had no right or power to prevent Johnson from spending whatever amount of money Johnson wished.
 
 
 21
 At bottom, the "common fund" doctrine is simply an exercise in equity. We think that making Tobias pay a cent to defray the expenses of a party who fought to keep Tobias from having anything from the supposed fund is inequitable.
 
 
 22
 The judgment is reversed.
 
 
 23
 REVERSED.
 
 
 
 [1]
 According to the affidavit of the Assistant United States Attorney involved, Tobias' offer to quitclaim these 42 acres was a "substantial factor in the Government's decision to increase its final offer to $475,000."