## CIRCUIT COURT OF FAIRFAX COUNTY

Nicholas Landrith

v.

First Virginia Bank et al.

### Case Nos. (Chancery) 136392, 136393

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

### October 11, 1995

This matter came to trial before this Court on September 5-6, 1995, to construe testamentary language in trusts established for the benefit of the Petitioner and members of his family and to resolve matters concerning the administration of these trusts by the Defendant Trustee. The Court took this case under advisement at the conclusion of the evidence and now issues this opinion letter.

The Petitioner, Nicholas Landrith (hereafter "Nicholas"), is the son of George C. Landrith, Sr., and Frances J. Landrith, and the brother of George Landrith, Jr. (hereafter "Lanny"). There are five grandchildren of George and Frances Landrith, all of whom are Lanny's children. During their lives and upon their death, George and Frances Landrith provided for their children through a series of inter vivos and testamentary trusts. One trust was a 1979 irrevocable trust with a corpus of approximately $300,000.00. This corpus generated an annual income of approximately $10,000.00 to be paid in quarterly installments for the benefit of Nicholas. Nicholas also was a beneficiary under three testamentary trusts created in the wills of George and Frances Landrith. First Virginia Bank ("the

Bank") qualified as the Trustee for the testamentary and irrevocable trusts.[1]

Article Seven of the George C. Landrith, Sr., will (the "GCL Residuary Trust") established a residuary trust for the benefit of Nicholas, Lanny, and the grandchildren. The $2.2 million trust corpus generates an annual income of approximately $80,000.00 to be paid in quarterly installments for "the support, maintenance, and education" of the beneficiaries. In making distributions to Nicholas and Lanny, the Trustee is required to treat the brothers "as equally as possible." As to the distributions to the grandchildren, the GCL Residuary Trust further directs that "no distributions shall be made to [the] grandchildren except under unusual circumstances" during the life of their father, Lanny.

Article 7(a) of the Frances J. Landrith will (the "FJL Pecuniary Trust") established a pecuniary trust for the benefit of Nicholas. The $200,000.00 trust corpus generates an annual income of $10,000.00 to be paid to Nicholas in quarterly installments.

Article Nine of the Frances J. Landrith will (the "Residuary Trust") established a residuary trust in the amount of approximately $500,000.00 for the benefit of Nicholas, Lanny, and the grandchildren. Article 9(a) provides:

> [The] Trustees shall pay over or expend the net income of the Trust in such frequent installments as my Trustees shall determine, but not less frequently than quarterly, in such proportions as my Trustees may at the time of each payment fix and determine, to . . . Nicholas Landrith and all of [the] grandchildren, at the discretion of the Trustees to apply the same, or part thereof, to the support, maintenance, and education of any one or more of such persons. In making such distributions, [the] Trustees shall take into consideration all other income and assets available to [Nicholas] and his wife and shall generally provide to [Nicholas] a reasonable amount of spendable income, which should be in the range of Thirty to Thirty-Six Thousand Dollars ($30,000.00 to $36,000.00) per year, total of all income taking into account the provisions [of the FJL Pecuniary Trust], any other trusts that [Frances J. Landrith] may have created for him

---

[1] Lanny and the bank were both named as Trustees under several of the trust provisions, and the Bank qualified as the Trustee for the irrevocable and testamentary trusts. Lanny never qualified as a Co-Trustee.

or any other sources of income which he may have. In addition, [the] Trustees shall provide for payment of federal and state income taxes, make provisions for obtaining a new car on a regular basis, provide for vacation trips, provide for medical or emergency needs of [Nicholas], provide for the cost of redecorating his home or replacement of major appliances and major repairs thereof, and provide costs of any nursing home or other type facility to which [Nicholas] and his wife, Kathleen, might move, for as long as [Nicholas] is alive.

Nicholas initially brought two suits which were later consolidated. A motion to bifurcate was also granted, separating into two proceedings the issues surrounding construction of the will on the one hand and matters of accounting and surcharge on the other. The instant trial initially raised four issues: the construction of the term "spendable income" in the FJL Residuary Trust and whether the Plaintiff was receiving more than $30,000.00 to $36,000.00 in "spendable income"; whether the Trustee was making payments of income at least quarterly under the FJL Pecuniary Trust; whether the Trustee properly interpreted the phrase "unusual circumstances" in distributing income from the GCL Residuary Trust to support and maintain George C. Landrith, III, during his congressional campaign; and whether the Trustee was acting in accordance with the testator's wishes with regard to Article 9(a) of the FJL Residuary Trust.

At trial, the parties stipulated that no matter how "spendable income" was construed, Nicholas received $30,000.00 to $36,000.00 in spendable income annually. They further agreed that income distributions out of the FJL Pecuniary Trust were timely made. In view of these agreements, the Court considers those issues to have been resolved and decides the remaining issues of the construction of the phrase "unusual circumstances" and the issue of the administration of Article 9(a) of the FJL Residuary Trust.

As a preliminary matter at trial, the Court found that the phrases "unusual circumstances" and "spendable income" were ambiguous and in need of construction by the Court. To that end, the Court allowed the admission of facts and circumstances testimony as extrinsic evidence of the proper construction of those phrases. *See, Smith v. Gillikin*, 201 Va. 149 (1959). In addition, the Court found ambiguous the circumstances under which the testator intended the Trustee to provide for the expenses listed in the third sentence of Article 9(a).

The Court's duty is to ascertain the intention of the testator as expressed in the trust instrument. *Clark v. Strother*, 238 Va. 533 (1989). In doing so, the Court must determine what the testator meant by what she said, not what it might be supposed she intended to say or should have said. *Chavis v. Myrick*, 190 Va. 875 (1950). To this end, the Court must determine the testator's intent from the language of the will, if possible. *Baker v. Linsly*, 237 Va. 581 (1989); *Gasque v. Sitterding*, 208 Va. 206 (1967). In ascertaining that intent, the presumption is that the testator used words in their ordinary meaning. *McKinsey v. Cullingsworth*, 175 Va. 411 (1940). If the language of the will is ambiguous, facts and circumstances evidence may be admitted to show the testator's intent. *Coffman's Adm'r v. Coffman*, 131 Va. 456 (1921).

Generally, a trustee's discretion is broadly construed, but the trustee's actions must be an exercise of good faith and reasonable judgment to promote the trust's purpose. A trustee's discretion will not be overruled by a court unless the trustee has clearly abused its discretion granted under the trust instrument or acted arbitrarily in such a way as to destroy the trust it is to maintain. *NationsBank v. Estate of Grandy*, 248 Va. 557, 450 S.E.2d 140 (1994).

## The GCL Residuary Trust

Having heard the testimony presented, the Court finds that the language of the GCL Residuary Trust permits the Trustee to make income distributions for the support and maintenance of a grandchild in the event of an unusual circumstance during the lifetime of Lanny. The Court finds that the income distributions made to George C. Landrith, III, constituted support and maintenance for the period of time that he ran for Congress. Further, the Court finds that his campaign for Congress was an "unusual circumstance" as contemplated by the testator. The campaign of George C. Landrith, III, was a circumstance out of the ordinary, and the expenses incurred were limited in duration and directly caused by his need for support and maintenance during his campaign. Given the interests of the testator, this activity was the type of unusual circumstance that the testator intended to be funded by income distributions from the GCL Residuary Trust.

## The FJL Residuary Trust

With regard to the construction of the FJL Residuary Trust, this Court finds that it was never the intent of the testator to allow the Trustee to

invade the principal in the administration of any provision of Article 9(a). Distributions specified under Article 9(a) are allowable from income only. There is no implication that the principal of the Trust may be invaded under Article 9(a), particularly in light of language in other trust provisions that explicitly allows an invasion of principal by the Trustee.[2]

The first sentence of Article 9(a) directs the Trustee to make income distributions to Nicholas and the grandchildren in any proportion or amount that the Trustee sees fit, whether as support, education, and maintenance, or otherwise. The discretion of the Trustee in making such distributions is broad. The Court finds that the second and third sentences of Article 9(a) serve as limitations on the Trustee in exercising this discretion. These sentences direct the Trustee to administer the distributions to Nicholas in such a manner as to insure that the needs and financial stability of Nicholas and his wife will be met. These sentences contemplate the difficulties Nicholas might otherwise have in managing the trust distributions without financial guidance.

The second sentence directs that the Trustee provide out of the Trust income "a reasonable amount of spendable income" to Nicholas in the range of $30,000.00 to $36,000.00, provided that Nicholas does not already receive in excess of that amount from other income and assets. As previously noted, the parties stipulated that Nicholas meets or exceeds that range of spendable income.

The Court finds, however, that Nicholas' income from other sources is irrelevant to the directive of the third sentence. The third sentence directs the Trustee to provide for certain enumerated expenses regardless of Nicholas' other income. The Court finds that these expenses are to be provided for out of the income generated from the FJL Residuary Trust of Article 9(a) and not from the income of other trusts managed by the Trustee or income available to Nicholas from some other source. The Court finds, however, that while it was the intent of the testator to make certain provisions for her son, Nicholas, it was not her intent that these provisions should be made by depleting the Trust corpus. Thus, in conjunction with its holding above, the Court finds that the Trustee is prohib-

---

[2] Article 2(c) of the 1979 Irrevocable Trust permits an invasion of principal. So, too, do the trust provisions of Articles 6(A), 7(b)(I), and Eight of the George C. Landrith, Sr., Will, and Articles 6(b)(I), 7(b)(I), 8(b)(I), 9(b)(I), and Ten of the Frances J. Landrith Will. Each of these trust provisions, and the trust provisions of Article 9(a) of the FJL Residuary Trust, were drafted by the same attorney.

ited from invading the Trust principal to provide for those expenses to the extent they exceed the available income distribution.

The Court finds this construction of Article 9(a) to be consistent with the testator's desire to provide her son with certain amenities she took care to offer (indeed, urge upon) him in her lifetime, such as a new car, vacations, and home furnishings. It also reflects her love for Nicholas, and his limitations, that she would provide for his emergency and long-term medical care. To the modest extent it is relevant, the Court further finds this construction of Article 9(a) consistent with the Bank's apparent interpretation of the provision during the first five years of administration. *See, Leydecker v. Warren*, 288 P.2d 51 (Cal. App. 1955).

The Court additionally finds that once the directives of the second and third sentences of Article 9(a) have been met, the Trustee has wide discretion under the first sentence of Article 9(a) to distribute any remaining income from the Trust to the beneficiaries as it sees fit.

### February 8, 1996

This matter came before the Court on January 22, 1996, on counsel's joint motion for clarification of the Court's opinion letter of October 11, 1995. Counsel seeks clarification of the Court's ruling on two issues regarding the Trustee's discretion in the payment of income taxes and the reimbursement of the Trustee for attorney's fees in defending this proceeding.

### *Payment of Income Taxes*

The first issue is whether the third sentence of the Article 9(a) trust provision of the Frances J. Landrith will ("the FJL Residuary Trust") gives the Trustee the discretion to pay out of the FJL Residuary Trust income all of the federal and state income taxes related to income distributed under other trusts administered by the Trustee. The other income-generating trusts administered by First Virginia Bank are the 1979 Revocable Trust, the Article 7(a) trust provision of the Frances J. Landrith will ("the FJL Pecuniary Trust"), and the Article 7 trust provision of the George C. Landrith will ("the GCL Residuary Trust").

The Court finds that of the 1979 Revocable Trust, the GCL Residuary Trust, and the FJL Pecuniary Trust, only the FJL Pecuniary Trust directs the Trustee to withhold from the Trust's income money to pay state and

federal taxes on the income generated by the Trust.[3] The 1979 Revocable Trust clearly leaves it to the Trustee's discretion to make a withholding for the payment of taxes on the income generated by the trust, and the GCL Residuary Trust provision is silent as to a withholding for payment of taxes related to the Trust income.

The third sentence of the FJL Article 9(a) Residuary Trust directs, in part, that the Trustee shall provide for the payment of state and federal income taxes for Nicholas Landrith. This is a broader directive than that of the FJL Pecuniary Trust in that it does not specify that a withholding should be made from the Trust income to pay only the taxes related to that income. It makes no reference to the source of the income on which tax payments shall be made. Therefore, the Court finds that Article 9(a) of the FJL Residuary Trust requires the Trustee to make state and federal income tax payments with income from the FJL Residuary Trust but does not limit those payments to taxes related to the FJL Residuary Trust only. Additionally, the Court finds that the taxes related to the income of the FJL Pecuniary Trust shall be paid with income generated by the FJL Pecuniary Trust.

### Attorney's Fees

The second issue of which counsel seeks clarification is whether the Trustee may be reimbursed out of the Trust corpus for attorney's fees generated in defending this matter. For the reasons below, the Court finds that First Virginia Bank is entitled to such reimbursement.

A trustee is vested with authority to employ counsel, if necessary, for the protection or preservation of the trust estate. *Patterson v. Old Dominion Trust Co.*, 156 Va. 763, 159 S.E. 168 (1931). The law is well-settled that where the trustee properly brings or defends a proceeding for the benefit of the trust estate, the trustee is entitled to reimbursement from the trust for reasonable attorney's fees expended in protecting the trust. *Wiglesworth v. Taylor*, 239 Va. 603, 391 S.E.2d 299 (1990). However, where the trustee was at fault in causing the litigation, the trustee should not receive reimbursement. *Id.* (citing *Clare v. Grasty*, 213 Va. 165, 172, 191 S.E.2d 184, 189 (1972)).

---

[3] The FJL Pecuniary Trust provides that "[the] Trustees shall . . . pay in such frequent installments as [the] Trustees shall determine . . . all of the net income, after making an allowance and withholding to assure payment of federal and state income taxes related thereto, to and for the use and benefit of . . . Nicholas Landrith."

The Court finds that First Virginia Bank was not at fault for causing the litigation. This proceeding was brought to determine the construction of certain trust provisions and was not brought against the Trustee for an alleged abuse of discretion. This Court found only that First Virginia Bank had misinterpreted the intent of the testators and acted erroneously in its good faith administration of the Trusts. The Court did not find that First Virginia Bank had acted in bad faith or otherwise abused its discretion in disregarding the testators' intent. Therefore, the Court finds that First Virginia Bank, as Trustee, is entitled to reimbursement from the Trust corpus for attorney's fees in defending its actions in this proceeding.

November 5, 1996

This matter came before me on September 16, 1996, for argument on three outstanding issues.

I find that First Virginia Bank properly credited two distributions (in the amounts of $84,012.50 and $38,520.00) to the "In Addition To Expenses." It is appropriate to recharacterize previous discretionary distributions as reductions to "In Addition To Expenses."

I further find that Nicholas J. Landrith is not entitled to reimbursement for $15,499.00 in income taxes and medical expenses incurred in 1984 and 1985. Based on the terms of the Frances J. Landrith will, Nicholas Landrith's entitlement to reimbursement for such expenses begins not with the death of Frances Landrith, but rather with the establishment (including funding) of the trust referenced in the will.

Finally, I find that Nicholas J. Landrith is entitled to recover reasonable costs and attorney's fees incurred in construing the ambiguities contained in the GCL Residuary Trust, Art. 7 ("unusual circumstances") and the FJL Residuary Trust Art. 9(a) ("spendable income" and the circumstances under which the testator intended the Trustee to provide for the expenses listed in the third sentence).

It is clear that the general rule in America, as well as Virginia, is that attorney's fees are not awarded absent a contractual or statutory provision to the contrary. *Lannon v. Lee Conner Realty Corp.*, 238 Va. 590, 594 (1989); *Rainey v. City of Norfolk*, 124 Va. App. 968 (1992). However, there is a narrow exception to this general American rule when dealing with trusts and estates. This exception is known as the "doctrine of judicial instructions." *See duPont v. Shackelford*, 235 Va. 588 (1988); *Delaware Trust Co. v. Everitt*, 140 A.2d 778, 787-88 (Del. 1958). Under this doctrine, all costs of litigation regarding the construction of an ambiguous

will or trust are paid by the estate, regardless of whether the ambiguity is construed in favor of or against the petitioner. To qualify, the trust instrument must be "sufficiently ambiguous to require litigation to establish its meaning and effect." 76 Am. Jur. 2d, *Trusts*, § 739. Thus, if a beneficiary suffers from an ambiguity contained in a will or trust, he should not have to bear the costs of resolving the ambiguity in litigation when he played no part in creating the ambiguity. Reimbursable costs, in addition to attorney's fees, include expert witness fees and accountants' fees. 76 Am. Jur. 2d, *Trusts*, § 741.

Although not prominent in case law, the doctrine of judicial instructions has been applied at least once by the Supreme Court of Virginia. In *Allison v. Allison*, 101 Va. 537, 576 (1903), the Court ordered that the costs of construing the will of a testator be paid out of the estate. "[I]n view of the novelty and difficulty of the questions presented for decision in this record and that it would have been eventually necessary for the executors to ask the aid of the courts in construing the will of their testator . . . the costs should be paid out of the estate . . . ." *Id.* More recently, in *duPont v. Shackelford*, 235 Va. 588 (1988), the issue arose in another will construction case. In *duPont*, the doctrine of judicial instructions was not affirmatively recognized by the Supreme Court of Virginia, but neither was it explicitly rejected:

> The parties to this appeal dispute the existence of this doctrine in Virginia. However, we need not resolve that dispute to dispose of this argument. This is so because the trial court concluded, as a matter of fact, that the Claimants never sought judicial instructions. *Id.* at 595.

Although *duPont* does not decide the issue, I believe that (combined with *Allison*), it reflects a receptiveness to the doctrine of judicial instructions in Virginia. For this reason I grant the Complainant's request for reimbursement from the trust of both reasonable attorney's fees and costs associated with the construction of the Landrith wills. This award of attorney's fees and costs is not based on the common fund doctrine. Rather, it is based on the doctrine of judicial instructions, as established in *Allison* and *duPont*.

If the parties have stipulated to the reasonableness of the attorney's fees and costs (which includes all professional fees), I ask that Mr. Hale submit a proposed allocation of these expenses apportioning them to their respective trust accounts. The fees and costs incurred in construing the "unusual

circumstances" ambiguity shall be reimbursed from the GCL Residuary Trust, Art. 7, and the "spendable income" and expense provision in sentence three of Article 9(a) shall be reimbursed from the FJL Residuary Trust Art. 9(a). If the parties decide a hearing is necessary on the issue of reasonableness or allocation, such a hearing shall be scheduled.